| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. CROIX |

CONSTANCE ALEXANDER, DINORAH
WILLIAMS, and PETULA ALEXANDER,

              **Plaintiffs,**

    v.

STEADFAST INSURANCE CO.,
DEEP SOUTH SURPLUS OF TEXAS,
and CRC SCU f/k/a CRUMP INS.
SERVICES,

              **Defendants.**

1:20-cv-00038-MEM-EAH

TO:    **Lee J. Rohn, Esq.**
       **Jennifer Sue Koockogey, Esq.**
       *For Plaintiffs*
       **Mark Wilczynski, Esq.**
       *For Steadfast Ins. Co.*
       **Robert J. Kuczynski, Esq.**
       **David S. Hendrix, Esq.**
       **Veronica Andrea Meza, Esq.**
       *For CRC SCU*

## REPORT AND RECOMMENDATION

    **THIS MATTER** comes before the Court on an Order referring all pending dispositive

matters in this case to the undersigned for a Report and Recommendation ("R&R"). Dkt. No.

95. In this R&R, the Court addresses the pending dispositive motion: the Renewed Motion to

Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to Texas,

filed by Defendant CRC SCU f/k/a Crump Ins. Services ("CRC"),[1] Dkt. Nos. 55, 56. Plaintiffs

---

[1] CRC SCU states that it was incorrectly named in this lawsuit: its correct name is CRC
Insurance Services, Inc. Dkt. No. 55 at 1.

opposed the motion and CRC filed a reply. For the reasons stated below, this Court recommends that the Renewed Motion to Dismiss be granted.

## BACKGROUND

### I.    The Complaint

In July 2020, Constance Alexander, Petula Alexander, and Dinorah Williams ("Plaintiffs"), filed a complaint in Virgin Islands Superior Court against Steadfast Insurance Company ("Steadfast"), Clarendon American Insurance Company ("Clarendon"), Deep South Surplus of Texas, L.P. ("Deep South"),[2] and CRC SCU f/k/a Crump Ins. Services, entitled *Constance Alexander v. Steadfast Ins. Co.*, SX-20-CV-0609.  Dkt. No. 1-2.  That complaint was removed to federal court in August 2020 by Steadfast on the basis of diversity jurisdiction and is the operative complaint herein. Dkt. No. 1.

As alleged in the complaint, the Plaintiffs brought the instant action as assignees of the rights of Crosstech VI, Inc., a resident corporation of the U.S. Virgin Islands; Tom Crossland, a Texas resident and former president of Crosstech Boiler Services, LP, the parent organization of Crosstech VI; and Pedro Vega. Dkt. No. 1-2 (Compl.) ¶ 2. Crosstech VI was formed in 2005 as a wholly owned subsidiary of Crosstech Boiler Services, the "front company" for work to be done by Crosstech Boiler Services at the Hovensa oil refinery on St. Croix, Virgin Islands. *Id.* ¶ 10. Crosstech VI's employees were loaned to Crosstech Boiler

---

[2] The Texas Secretary of State filed a Certificate of Termination concerning Deep South, formerly a Texas Limited Partnership, in December 2014. Dkt. No. 1-4.

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 3

Services and were controlled by that company. *Id*. ¶ 11. The vehicles used in Crosstech VI's work were hired from Crosstech Boiler Services, and the insurance on those vehicles was provided by Crosstech Boiler Services' insurance policy from Clarendon. *Id*. ¶¶ 12, 14, 15. There was a written agreement that Crosstech VI would be a named insured under Crosstech Boiler Services insurance policies, and the relationship between Crosstech VI and Crosstech Boiler Services was disclosed to all Defendants at the time Crosstech Boiler Services acquired the insurance. *Id*. ¶¶ 16, 17. Vega was a Crosstech VI employee—a loaned employee of Crosstech Boiler Services—and was provided with a Crosstech VI vehicle. *Id*. ¶ 19. Defendants represented to Crosstech VI that they would and did provide Crossland's entities in the Virgin Islands an insurance policy that would indemnify them for all potential claims arising from their business there. *Id*. ¶ 35.

Plaintiffs' rights as assignees arose from a Superior Court lawsuit filed in 2007, entitled *Constance & Petula Alexander v. Pedro Vega and Crosstech VI, Inc.,* SX-07-CV-322, in which they asserted entitlement to damages for negligence against Crosstech VI, Crossland, and Vega. *Id.* ¶ 8.[3] Crosstech VI, Crossland, and Vega tendered defense and indemnification of the claims to Steadfast and Clarendon, which denied the claims. *Id.* ¶¶ 9, 20, 32. As a result

---

[3] The complaint does not explain what occurred, and when, that caused Crossland, Crosstech VI, and Vega to seek indemnification. CRC provided an affidavit sworn to by Vega in July 2007 in which he averred that he was a supervisor employed by Crosstech, VI; he could use a company vehicle for personal use; and on Sunday, April 1, 2007, he was involved in an accident on St. Croix in that vehicle. Dkt. No. 56-10 at 1. The May 2019 assignment of rights explained that Constance Alexander, Petula Alexander, and Dinorah Williams were in the other car involved in that accident. *Id*. at 3-4.

of the denial, Crosstech VI, Crossland, and Vega could not afford counsel to defend the declaratory judgment action filed against them by the insurance companies and believed they would lose at trial and not be able to pay the verdict. *Id.* ¶ 31. They entered into a $1,000,000 consent judgment in favor of the Plaintiffs and assigned all claims they had against the insurance companies to them. The Superior Court entered the consent judgment in a May 2019 Order. *Id.* ¶ 21.

The instant complaint described CRC as an "insurance broker with its principle [sic] place of business in Texas which does business in the Virgin Islands." *Id.* ¶ 6. It cited a Steadfast general liability policy, with a policy period from January 11, 2007 to January 11, 2008, that required Steadfast to pay sums that Crosstech Boiler Services may become legally obligated to pay for bodily injury, *id.* ¶ 22, and Clarendon's business auto policy (for December 19, 2006 to December 19, 2007), *id.* ¶ 23. It further alleged that CRC underwrote the Steadfast policy as an agent of Steadfast. *Id.* ¶ 25. The complaint sought, inter alia, a declaration that the assignment to Plaintiffs was valid and enforceable and that Defendants Steadfast, Clarendon, Deep South, and CRC were liable for the consent judgment. *Id.* at 8-9.

Following removal of the complaint to federal court in August 2020, CRC filed a motion to dismiss or to transfer venue, Dkt. Nos. 3, 4, and Steadfast filed an answer. Dkt. No. 5. Plaintiffs opposed the motion to dismiss, Dkt. No. 17, asserting personal jurisdiction over CRC and that venue was proper, but requested permission to conduct discovery on the jurisdictional issue. Dkt. No. 17. District Judge Anne Thompson, to whom the case was

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 5

assigned in June 2021, Dkt. No. 22, denied CRC's motion to dismiss without prejudice and granted limited jurisdictional discovery. Dkt. No. 23.

## II.    Jurisdictional Discovery

The documentary and testimonial evidence adduced during jurisdictional discovery showed the following. On October 27, 2006, Crosstech Boiler Services LP, listing a mailing and premises address in Richardson, Texas, filed an application with Champion Commercial Insurance ("Champion"), located in Dallas, Texas, seeking Commercial General Liability insurance for a January 11, 2007 through January 11, 2008 coverage period ($1 million per occurrence). Dkt. No. 56-5. The application indicated that Crosstech Boiler Services had no subsidiaries and was not engaged in joint ventures, did not lease employees to or from other employers, and had no labor exchanges with other businesses or subsidiaries; and that the additional interests to be insured were Vulcan Chemical in Louisiana and Arlington ISD in Texas. *Id.* at 1, 4, 5. A January 9, 2007 email from Champion, the agent, to Crump Insurance Services, the broker, confirmed that Crosstech Boiler Services had only one location—in Richardson Texas. Dkt. No. 56-6 at 1. Zurich North America ("Zurich") issued the policy, effective January 11, 2007 to January 11, 2008 (the "2007 Policy"). Dkt. No. 65-1. Crosstech Boiler Services was the named insured. *See, e.g., id.* & p. 59; Dkt. No. 56-6 at 756, 61.

On April 1, 2007, Crosstech VI Supervisor, Pedro Vega, got into a car accident on St. Croix with Plaintiffs while driving a Crosstech VI vehicle. Dkt. No. 56-10.

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 6

In a June 20, 2007 email, a Crump representative wrote to Zurich stating that Crosstech Boiler Services had submitted a name change request to Champion—to change the named insured to CRS V.I., Inc.—and that Crump was told "no change in operations, just a name change." Dkt. No. 56-8 at 1-4. No further amendments were sought. The name change went into effect on June 15, 2007, *id.* at 3, and was memorialized in a June 22, 2007 endorsement. Dkt. No. 56-9 at 1. The address of CRS V.I. on the policy was the same Texas address as that of Crosstech Boiler Services. *Id.*

In July 2007, a representative from Hovensa (an entity that was not described) sent Crossland an email stating that, "[l]ast year, our records show we spent over $9 million with Crosstech"; that Hovensa needed CRS V.I. to have commercial general liability insurance in the amount of $2 million per occurrence; and that Crossland should arrange that coverage with his insurance carrier. Dkt. No. 60-1 at 35. Crossland apparently contacted his agent, Champion, which in turn emailed Crump to ascertain if the increase was possible and the cost. *Id.* at 36. On January 8, 2008, Crossland filled out a Zurich general liability application, apparently to support its request for increased coverage. *Id.* at 37-44. On the line asking for "Name of Applicant," the form showed CRS VI Inc. on the first line, with Crosstech V.I./Crosstech Boiler Service, Inc. in parenthesis on the second line. *Id.* at 37. Crossland attached a Crosstech VI Employee Orientation document, dated February 18, 2007, discussing safety practices at Hovensa but containing no identifying information about Hovensa. *Id.* at 45-58. The record also contains endorsements from the Zurich policy,

effective January 11, 2008 to January 11, 2009 (the "2008 Policy"). Dkt. No. 60-1 at 1-19. The named insured was CRS V.I., Inc., with the Richardson, Texas mailing address. *Id.*

CRC's Chief Operating Officer Neil Kessler submitted a Declaration in which he averred, on behalf of CRC, that: (1) CRC was organized under the laws of Alabama, where its principal place of business was located; (2) CRC acquired Crump in 2012, and it was merged into CRC in 2013; and (3) Crump had been organized under the laws of Texas with its principal place of business located there. Dkt. No. 56-1. Kessler further averred that, at no time material to the allegations in the complaint was CRC or Crump registered to conduct business in the Virgin Islands, nor did they own real or personal property, maintain a bank account, appoint an agent for service of process, advertise their services, enter into a contract, have an office, agents, sales representatives or employees, or solicit or conduct business in the Virgin Islands. *Id.*

Kessler was also deposed as CRC's Rule 30(b)(6) witness in both the *Alexander* and *Codrington*[4] cases. Dkt. No. 60-6. He testified that he had been employed by CRC since approximately 2010, *id*. at 10-11, and could only testify to Crump's practices as an insurance broker, given that CRC was also a broker that performed the same kinds of services, *id*. at 19, 31-32. CRC (and Crump), as wholesale brokers, distributed insurance products to retail

---

[4] *Codrington v. Steadfast Ins. Co*., Civ. No. 19-cv-00026 (D.V.I.), is a sister lawsuit to the instant lawsuit. The two lawsuits are not consolidated, but *Codrington* involves the same Defendants and issues (assignment of rights based on an automobile accident by a Crosstech, VI employee in March 2007). The Plaintiffs are different in the two lawsuits.

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 8

agents, and did not deal directly with insureds. *Id.* at 13. Retail agents would solicit insureds, and brokers solicited agents. *Id.* at 29. Clients submitted details of their insurance requirements and their applications to the retail insurance agents. *Id.* at 14. Crump had no role concerning an insured's policy after the policy had been underwritten and produced, except if the retail insurance agent requested some sort of change to the policy. *Id.* at 46.

Based on Kessler's review of the 2007 Policy, he was not aware that Crosstech Boiler Services or CRS V.I. ever tendered information that indicated they were primarily doing business in the U.S. Virgin Islands. *Id.* at 23. He stated that CRC did not restrict or refuse to conduct business with retail insurance agents who were obtaining coverage for potential insureds who primarily conducted business in U.S. Territories. *Id.* at 28. When asked if Crump acquired insurance policies on behalf of the retail insurance agent for Crosstech Boiler Services or CRS V.I., he responded that Crump acquired coverage through a retail agent for the entity indicated on the application. *Id.* at 34. He agreed that Crump procured insurance policies on behalf of its client, Champion, for the potential insured, CRS V.I., when CRS V.I. sought additional coverage per the January 8, 2008 application. *Id.* at 43. As to whether Crump had information in January 2008 (in relation to that application) that CRS V.I. was doing business in the Virgin Islands, Kessler responded that the information in the application and the email correspondence requesting additional coverage did not state it was in the Virgin Islands. *Id.* at 44-45.

Thomas Crossland was deposed on behalf of Crosstech VI as a Rule 30(b)(6) witness in *Codrington v. Crosstech V.I. Inc. & Edwin Correa*, SX-97-cv-278, a Superior Court case, in August 2008; Plaintiffs provided the transcript in jurisdictional discovery. Dkt. No. 60-5 at 12. He testified that all of Crosstech VI's work was done on St. Croix until its contract expired in July 2007, and Crosstech Boiler Services did its work in Texas. *Id.* at 5-6, 8. The deposition's only reference to CRS V.I. was Crossland's description of it as a Virgin Islands corporation with a "separate ownership structure" from Crosstech VI, although performing similar work. *Id.* at 9-10. At the time of the deposition, CRS V.I. had a contract with Hovensa. *Id.* It is noteworthy that CRS V.I. is not mentioned in the complaint.

The bulk of the deposition focused on the March 2007 accident between Crosstech VI supervisor Edwin Correa and Mr. Codrington, which underlay the claims in the *Codrington v. Crosstech VI* lawsuit in Superior Court. *Id.* at 10-.39, 52-61. A Crosstech Boiler Services policy issued by Clarendon covered vehicles used in Dallas but not on St. Croix. *Id.* at 42-43. He was shown a Zurich Commercial General Liability Policy declarations page, and responded that it did not apply to Crosstech VI. *Id.* at 47. In addition, he was asked whether he had a Commercial Liability Policy for St. Croix that covered Crosstech VI for the period in question. He had "determined that [the Zurich policy] did not cover [the lawsuit by Codrington]." *Id.* at 48. Crossland testified briefly about the Vega accident: it occurred on a weekend shortly after Correa's accident. *Id* at 52-53.

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 10

###### III.        Arguments

In April 2022, following the conclusion of jurisdictional discovery, CRC renewed its motion to dismiss for lack of personal jurisdiction or to transfer venue to Texas. Dkt. Nos. 55, 56. It argued that CRC did not provide a service in the U.S. Virgin Islands or purposefully avail itself there, as Crump was a Texas corporation and, as a broker, did not deal directly with insureds or enter into contracts of insurance with anyone, anywhere; there was no evidence that Crump was informed that Crosstech Boiler Services had business operations in the Virgin Islands, given the email indicating that changing the name of the insured to CRS V.I., which occurred after the accident, represented only a name change and the only business location for the insured was in Texas; and nothing in the 2006 application showed that the policy was underwritten to insure losses in the Virgin Islands. Dkt. No. 55. As a result, none of the provisions in the V.I. Long-Arm Statute, 5 V.I.C. § 4903, applied. *Id.* at 6-10. Because Plaintiffs failed to establish personal jurisdiction under the Long-Arm Statute, a Due Process Clause analysis was irrelevant. Nevertheless, Plaintiffs did not establish the requisite minimum contacts to support this prong of the analysis either. *Id.* at 10-11. CRC also argued that the case should be dismissed for improper venue, as none of the venue options set forth in 28 U.S.C. § 1391(a) applied to the Virgin Islands. *Id.* at 12. And even if the Virgin Islands were deemed a proper venue, transfer to Texas was required for the convenience of the parties and witnesses and in the interest of justice under 28 U.S.C. § 1404(a). *Id.* at 12-18.

Plaintiffs opposed the motion. Dkt. No. 60. They asserted that the Court must accept the allegations of the complaint as true, and they needed to establish only a prima facie case of personal jurisdiction. *Id*. at 5-6. They sufficiently pleaded personal jurisdiction (citing numerous paragraphs from the complaint) showing that their claims for relief arose from CRC transacting business in the Virgin Islands through its underwriting of insurance policies, contracting to supply services there, and contracting to insure persons, property or risks there. *Id.* at 10. They argued that Crossland, on behalf of Crosstech Boiler Services and "its additional insureds, including Crosstech VI and CRS VI, applied for insurance through Champion who in turn submitted that application to CRC, its wholesaler"; in the 2008 application, Crosstech Boiler Services "attached information indicating that Crosstech was performing work at the Hovensa Refinery"; and CRC "accepted that information" and submitted the application for the coverage Crosstech requested "for the business they were engaged in in the USVI and Texas." *Id.* at 2-3. In addition, as of July 30, 2007, CRC received information that CRS V.I. earned $9 million with Hovensa in 2006. *Id.* at 4, 10-11.

Plaintiffs further argued that CRC transacted business in the Virgin Islands when it contracted with the agent to find a liability policy to cover the business entities in Texas and the Virgin Islands under 5 V.I.C. § 4903(a)(1) and (2). *Id.* at 11. The Court also had jurisdiction under § 4903(a)(6) since it was CRC's sole purpose to procure insurance for the agent, and the agent requested coverage for the entities doing business in the Virgin Islands. *Id.* at 11-12. Exercising personal jurisdiction did not violate due process because the complaint

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 12

pleaded specific jurisdiction, and CRC directed its activities at the Virgin Islands by choosing

to do business there. *Id.* at 12-14. Plaintiffs also contended that venue was proper in the VI

and CRC failed to meet its burden to transfer the case to Texas because many of the factors

weighed in favor of venue in the Virgin Islands. *Id.* at 15-21.

CRC filed a motion for an evidentiary hearing, asserting that, based on the

jurisdictional discovery, material facts were in dispute, including CRC's knowledge of

Crosstech's operations when the relevant policy was procured. Dkt. No. 64 at 2. CRC

indicated that Plaintiffs responded that there was "enough evidence in the record to deny

the motion and the expense of an evidentiary hearing is unnecessary." *Id.*

CRC filed a reply that reiterated and expanded on its initial arguments. Dkt. No. 65.

In May 2022, the parties stipulated to dismiss Clarendon. Dkt. No. 63. After being

assigned this case in September 2022, Dkt. No. 79, Judge Malachy E. Mannion referred the

motion to dismiss to the undersigned for an R&R on February 7, 2023.[5] Dkt. No. 95.

## DISCUSSION

### I. Legal Landscape for Personal Jurisdiction

#### A. Rule 12(b)(2) Motion

A plaintiff bears the burden of proving that jurisdiction is proper when a defendant

challenges a court's exercise of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *Metcalfe*

---

[5] In November 2022, CRC moved to stay discovery pending adjudication of its motion to dismiss, Dkt. Nos. 87, 88, which Plaintiffs opposed, Dkt. No 89. Defendant Steadfast joined CRC's motion, Dkt. No. 93, which Plaintiffs opposed, Dkt. No. 94. These motions are pending.

*v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Once a Rule 12(b)(2) motion is made, however, and plaintiff's allegations are challenged by affidavits or other evidence, the "plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks omitted); *see also Metcalfe*, 566 F.3d at 330 ("'[O]nce a defendant has raised a jurisdictional defense,' the plaintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'") (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). If a court does not hold an evidentiary hearing on the motion to dismiss, "the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004); *see also O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007).

To make a *prima facie* showing, a plaintiff must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state," *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992), and cannot "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.,* 735 F.2d 61, 66 n. 9 (3d Cir.1984)); *see also United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir. 2001) ("The *prima facie* showing must be based upon evidence of specific facts set forth in the record . . . [and] go beyond the pleadings and make affirmative proof") (internal quotation marks omitted); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269

(11th Cir. 2002) ("A *prima facie* case is established if the plaintiff presents enough evidence

to withstand a motion for directed verdict") (internal quotations omitted).

### B. Personal Jurisdiction in the Virgin Islands

Courts generally follow a two-step analysis to determine if personal jurisdiction in

the Virgin Islands is proper: (1) whether jurisdiction is authorized by the forum's long-arm

statute and (2) whether the exercise of personal jurisdiction over the defendant would

comport with due process under the United States Constitution, which requires that the

defendants have certain minimum contacts with the forum. *Unlimited Holdings, Inc. v.*

*Bertram Yacht, Inc.,* 48 V.I. 941, 944 (D.V.I. 2007); *see also Fin. Trust Co. v. Citibank, N.A.,* 268

F. Supp. 2d 561, 566 (D.V.I. 2003).

### 1. Virgin Islands Long–Arm Statute

"A federal court may exercise personal jurisdiction "according to the law of the state

where it sits." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). The Long-Arm

Statute of the Virgin Islands, Title 5, section 4903 of the Virgin Islands Code, provides:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or
> by an agent, as to a claim for relief arising from the person[ ]
>> (1) transacting any business in this territory;
>> (2) contracting to supply services or things in this territory;
>> (3) causing tortious injury by an act or omission in this territory;
>> (4) causing tortious injury in this territory by an act or omission outside this
>> territory if he regularly does or solicits business, or engages in any other
>> persistent course of conduct, or derives substantial revenue from goods used or
>> consumed or services rendered, in this territory;
>> (5) having an interest in, using, or possessing real property in this territory; or
>> (6) contracting to insure any person, property, or risk located within this
>> territory at the time of contracting.

(7) causing a woman to conceive a child, or conceiving or giving birth to a child; or
(8) abandoning a minor in this Territory.

5 V.I.C. § 4903(a).

## 2. Due Process Requirements

Due process requires that a foreign defendant have minimum contacts with the forum state in order for the Court to exercise personal jurisdiction over that defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). Under this standard, "jurisdiction is proper if the defendant has taken 'action . . . purposefully directed toward the forum State.'" *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 370 (3d Cir. 2002) (quoting *Asahi Metal Indus. Co., 1009 Ltd. v. Super. Ct. of Cal.,* 480 U.S. 102, 112 (1987)).

## II.   ANALYSIS

Because CRC has raised a jurisdictional defense, Plaintiffs bear the burden of establishing this Court's personal jurisdiction over CRC. *See Dayhoff,* 86 F.3d at 1302. CRC was named as a Defendant because it was formerly known as Crump Ins. Services, the broker that procured the Zurich general liability policy for the period January 11, 2007 to January 11, 2008 which, Plaintiffs alleged, required Steadfast to pay sums under the policy that it became legally obligated to pay for bodily injury arising out of an occurrence in the coverage territory. Dkt. No. 1-2 ¶¶ 22, 25. The occurrence was the April 2007 automobile accident involving Vega, a Crosstech, VI supervisor. Dkt. No. 56-10. The facts elicited from discovery

that Plaintiffs cite to support personal jurisdiction over CRC under 5 V.I.C. §§ 4903(a)(1), (2)

and (6) fail to do so.

**A. The Long-Arm Statute**

    **1. 5 V.I.C. § 4903(a)(1) – Transacting Business**

Section (a)(1) applies to entities "transacting business" in the Territory. *See* 5 V.I.C. §

4903(a)(1). "Transacting business is a term of art which means less than doing business but

more than performing some inconsequential act within a jurisdiction. . . . [T]ransacting

business requires a defendant to engage in some type of purposeful activity within the

territory." *Hendrickson v. Reg O Co.,* 17 V.I. 457, 462–63 (D.V.I. 1980) *aff'd,* 657 F.2d 9 (3d Cir.

1981); *see also Fin. Trust Co.,* 268 F. Supp. 2d at 567 (noting that, under subsection (a)(1),

transacting any business could be satisfied by a single act that amounted to transacting

business in the Territory, and finding it sufficient that the defendant entered into a contract

with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin

Islands); *Paradise Motors, Inc. v. Toyota de Puerto Rico, Corp.,* 314 F. Supp. 2d 495, 498 & n. 4

(D.V.I. 2004) (ruling that participation in some business dealings with the Virgin Islands

along with receipt of substantial revenue qualified as transacting business).

    The evidence shows unequivocally that CRC did not transact business in the Virgin

Islands, much less engage in some sort of "purposeful activity" there. The Declaration of Neil

Kessler, CRC's Chief Operating Officer, Dkt. No. 56-2, supported by his deposition testimony,

Dkt. No. 60-6, indicated that both CRC and Crump (prior to its acquisition by CRC in 2012)

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 17

were wholesale insurance brokers that did not deal directly with insureds. Dkt. No. 56-1; 60-6 at 13. And the insured at the time of the accident was Crosstech Boiler Services, a Texas corporation with an address and premises location in Richardson, Texas. Dkt. No. 65-1. Crosstech Boiler Services submitted an application to *Champion*, a Texas LLC that served as the retail agent for the insurance policy, in August 2006. Dkt. 56-5. It was *Champion*, not Crossland or Crosstech Boiler Services, that submitted the application to Crump. Dkt. No. 60-6 at 18. In other words, Crump did not deal with Crossland or Crosstech Boiler directly so as to transact their business, much less CRS V.I. or Crosstech VI.

Moreover, Kessler averred that, at no time material to the allegations in the complaint was CRC or Crump registered to conduct business in the Virgin Islands. Dkt. No. 56-1. Neither entity owned real or personal property, maintained a bank account, appointed an agent for service of process, advertised their services, entered into a contract, had an office, agents, sales representatives or employees, or solicited or conducted business in the Virgin Islands. *Id.* Plaintiffs provided no evidence to challenge that sworn statement that would subject CRC to jurisdiction under 5 V.I.C. § 4903(a)(1). *See Kressen*, 122 F. Supp. 2d at 585 (ruling that a similar affidavit showed that the defendant did not transact business in the Virgin Islands, contract to supply services to the territory, or contract to insure any person, property, or risk anywhere because the firm was an insurance agent not a company, and did not carry out its insurance agent activities in the territory).

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 18

Plaintiffs claim that the 2007 Policy's coverage territory, defined as the "United States of America (including its territories and possessions)," Dkt. No. 60-4, proved that it transacted business in the Virgin Islands. Dkt. No. 60 at 11. This provision is irrelevant because it applies to *Zurich's* policy, not to CRC—which was not the insurer—and could not and did not change the fact that the 2007 Policy's insured was Crosstech Boiler Services, in Texas (later CRS V.I., also in Texas); that the Policy was entered into with that understanding, based on the 2006 application; and any occurrence to be indemnified would have to relate to Crosstech Boiler Services.

### 2. 5 V.I.C. § 4903(a)(2) – Contracting to Supply Services in the Territory

To fall within 5 V.I.C. § 4903(a)(2), "all that is required by a literal interpretation of the statutory language is that the contract be performed in the Virgin Islands and that the cause of action arise out of the contract." *Godfrey v. Int'l Moving Consultants, Inc.,* 18 V.I. 60, 68 (D.V.I. 1980). "When a defendant is aware that the Virgin Islands is the ultimate destination of the goods it is supplying, the contract is said to be performed (at least in part) in the Virgin Islands." *Metcalfe,* 566 F.3d at 332 (citing, inter alia, *Four Winds Plaza Corp. v. Caribbean Fire & Assocs.,* 48 V.I. 899, 910 (D.V.I. 2007) (finding the defendant "was fully aware that the ultimate destination for the equipment was the Virgin Islands" because of indications in a sales proposal and payment check that the goods would be delivered in St. Thomas)).

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 19

Nothing in the 2007 Policy—in effect at the time of Vega's April 1, 2007 automobile accident—indicated that it was going to be performed or would be insuring anything or anyone in the Virgin Islands. In order to obtain the policy, Crosstech Boiler Services filled out an application in October 2006 (submitted to Champion, also in Texas) indicating that its address and premises were in Richardson, Texas; it had no subsidiaries and was not engaged in joint ventures; did not lease employees to or from other employers, and had no labor exchanges with other businesses or subsidiaries[6]; and that the additional interests to be insured were Vulcan Chemical in Louisiana and Arlington ISD in Texas. Dkt. No. 56-5 at 1, 4, 5. A January 9, 2007 email from Champion to Crump confirmed that Crosstech Boiler Services had only one location—in Richardson Texas. Dkt. No. 56-6 at 1. The policy went into effect on January 11, 2007 based on the representations in that application. Needless to say, Crosstech, VI was not mentioned in the application at all.

In June 2007, *after the Vega accident*, Crosstech Boiler Services requested an amendment to the policy to change the name of the insured to CRS V.I. Dkt. No. 56-8. This was solely a name change: the address of the insured, CRS V.I., remained Richardson, Texas, and no additional amendments covering any additional persons, items, or entities in the Virgin Islands or elsewhere were requested. *Id.* & 56-9. Kessler, CRC's executive, testified that, based on his review, he was not aware that Crosstech Boiler Services or CRS V.I. ever

---

[6] This evidence directly contradicts the allegations in the complaint that Crosstech, VI was a wholly owned subsidiary of Crosstech Boiler Services, Crosstech VI's employees were loaned to Crosstech Boiler Services and controlled by that company. Dkt. No. 1-2 ¶¶ 10, 11.

tendered information that indicated they were primarily doing business in the U.S. Virgin

Islands. Dkt. No. 60-6 at 23. Crossland testified that Crosstech Boiler Services did its work in

Texas, Dkt. No. 60-5 at 5-6, and that the Zurich Commercial General Liability Policy did not

apply to Crosstech VI or the March 2007 automobile accident by the Crosstech VI employee

at issue in the sister litigation, *Codrington v. Steadfast Ins. Co.*, No. 19-cv-26 (D.V.I.), *id.* at 47-

49, a conclusion relevant to this lawsuit as well.

Plaintiffs cite irrelevant facts and make arguments that rely on ambiguity in an

attempt to show that CRC knew that the policy insured persons and property in the Virgin

Islands. For example, they contend that, in order to obtain insurance that would "cover *his*

*business entities*. Crossland submitted information on *applications for insurance* evidencing

their safety program in the Virgin Islands and that they had earned over nine (9) million

dollars in the Virgin Islands in 2006." Dkt. No. 60 at 1 (emphasis added). By using the

ambiguous phrase "Crossland's business entities," they attempt to obscure the fact that the

only entity covered under the 2007 Policy at the time of the accident was Crosstech Boiler

Services—but not Crosstech VI that had employed Vega—as if the various "Crossland

business entities" could be easily substituted for each other. They also lump the 2006 and

2008 insurance applications together in an effort to erase any distinction between them, so

that the references to Crosstech VI and Hovensa in the 2008 application could be imparted

to the 2006 application to show it insured a business in the Virgin Islands. But the 2008

application and its attachments (and the July 2007 emails leading up to that application),

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 21

have no relevance to the 2006 application and 2007 Policy, the only policy at issue. *Cf. Jacobs*,

2020 WL 5579825, at *4 (post-incident communications with defendant, long after injury

occurred, do not support personal jurisdiction); *see* Dkt. No. 1-2, ¶ 22 (referring to the 2007

Policy at issue). In sum, the 2007 Policy did not provide any insurance services in the Virgin

Islands. Accordingly, because there was no evidence to show that CRC/Crump "knew" the

2007 Policy provided insurance services in the Virgin Islands, 5 V.I.C. § 4903(a)(2) does not

confer personal jurisdiction over CRC.

### 3.  5 V.I.C. § 4903(a)(6) – Insuring in the Virgin Islands

This provision of the Long Arm Statute establishes personal jurisdiction if the claim

arises from contracting to insure persons, property or risk in the Virgin Islands "at the time

of contracting." 5 V.I.C. § 4906(a)(6). For all of the reasons set forth above, this provision

does not apply, as nothing in the 2007 Policy, at the time of contracting in January 2007,

insured any person, property or risk in the Virgin Islands.

### 4.  Conclusion

Plaintiffs did not provide any affidavits that the Court could construe as true to

support their personal jurisdiction argument. Rather, the evidence consisted of documents

and deposition testimony, which showed no disputed facts that the Court would be required

to construe in Plaintiffs' favor. Plaintiffs' contention that CRC/Crump knew that Crosstech

Boiler Services had operations in the Virgin Islands when the 2007 Policy was procured is

simply unsupported argument. *Metcalfe*, 566 F.3d at 1230. Plaintiffs did not meet their

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 22

burden of establishing a prima facie case of jurisdiction by showing sufficient contacts

between CRC/Crump and the Virgin Islands, *Farino,* 960 F.2d at 1223.

### B.  Due Process

Plaintiffs contend that the complaint adequately pleads a prima facie case of specific

jurisdiction over CRC, and the evidence obtained during jurisdictional discovery also

supports such a finding. Dkt. No. 60 at 12. In particular, they assert that CRC "purposefully

directed its activities at the U.S. Virgin Islands by choosing to do business [there] and to

procure policies for retail insurance agents to ensure losses [there]." *Id.* Further, at the time

of the "submissions of applications for acquiring the insurance policies, CRC was aware of

the relationship between Crosstech Boiler Services LP and its wholly owned subsidiary

Crosstech VI, Inc. and CRS VI." *Id.* at 13.

Specific jurisdiction exists if the defendant has "purposefully directed its activities at

the forum" and whether the litigation "ar[o]se out of or relate[d] to" those activities.

*O'Connor*, 496 F.3d at 317 (internal quotation marks and alterations omitted). If those two

requirements are met, a court may consider "whether the exercise of jurisdiction otherwise

comports with fair play and substantial justice." *Id.* (internal quotation marks and alteration

omitted). The Court's conclusion that there is no statutory basis for exercising jurisdiction

over CRC in accordance with the Virgin Islands Long-Arm statute is sufficient to find that

personal jurisdiction does not exist over CRC, without having to examine whether due

process exists. *Kressen*, 122 F. Supp. 2d at 586. But even if the Court were to consider the due

process personal jurisdiction prong, the analysis above establishes that CRC did not "purposefully direct" its activities to the Virgin Islands. It directed its activities to its Texas agent, Champion, and to the insurance underwriter, Zurich, but not to the insured, Crosstech Boiler Services (or even CRS V.I.). Having failed to meet the first prong of the due process test, the Court need not address the second and third prongs as the showing on the first prong is sufficient to defeat personal jurisdiction based on due process.

### C.  Improper Venue, Transfer Venue

Because the Court concludes that Plaintiffs have not established personal jurisdiction over CRC/Crump, it need not reach CRC's alternative argument that the case should be dismissed based on improper venue, or else transferred to the appropriate district court in Texas. Dkt. No. 56 at 12-18.

### CONCLUSION

Accordingly, the Court **RECOMMENDS** that the Defendant CRC's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. No. 55, be **GRANTED**.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.  Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and

*Alexander v. Steadfast Insurance Co.*
1:20-cv-00038-MEM-EAH
Report & Recommendation
Page 24


Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S.

140 (1985).


ENTER:

Dated: February 28, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE