## DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| THOMAS AINGER and<br>ELIZABETH A. KLIESCH,<br><br>Plaintiffs,<br><br>v.<br><br>GREAT AMERICAN ASSURANCE<br>COMPANY, SIWELL, INC., AMERICAN<br>FINANCIAL GROUP, and DOES 1-9,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 2020-0005 |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
     *For Plaintiffs*

**Carol Ann Rich, Esq.,**
St. Thomas, U.S.V.I.
     *For Defendant Great American Assurance Company*

**J. Daryl Dodson, Esq.,**
St. Thomas, U.S.V.I.
     *For Defendant Siwell, Inc.*

**Richard H. Dollison, Esq.,**
St. Thomas, U.S.V.I.
     *For Defendant American Financial Group*

## <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant Great American Assurance Company's ("Defendant Great American") "Motion to Dismiss First Amended Complaint" (Dkt. No. 28), Plaintiff Thomas Ainger and Plaintiff Elizabeth A. Kliesch's ("Plaintiffs") Opposition thereto (Dkt. No. 38), and Defendant Great American's Reply (Dkt. No. 51); Defendant American

Financial Group, Inc.'s ("Defendant AFG") "Motion to Dismiss Plaintiffs' Complaint" (Dkt. No. 30), Plaintiffs' Opposition thereto (Dkt. No. 40), and Defendant AFG's Reply (Dkt. No. 52); and Defendant Siwell, Inc.'s ("Defendant Siwell") "Motion to Dismiss Pursuant to F. R. Civ. P. 12(b)(6)" (Dkt. No. 32), Plaintiffs' Opposition thereto (Dkt. No. 48), and Defendant Siwell's Reply (Dkt. No. 53).

For the reasons discussed below, the Court will grant in part and deny in part Defendant Siwell's Motion to Dismiss; deny Defendant Great American's Motion to Dismiss; and grant Defendant AFG's Motion to Dismiss, except to the extent that it seeks dismissal of Plaintiffs' claims with prejudice. The Court will grant Plaintiffs leave to amend their Complaint.

## I.      BACKGROUND

On September 19, 2019, Plaintiffs filed a Complaint in the Superior Court of the Virgin Islands (Dkt. No. 1-1), which was later amended (Dkt. No. 12-1). Defendant Great American removed the action to this Court on January 27, 2020. (Dkt. No. 1). The Amended Complaint asserts claims of breach of express and implied contract, estoppel, negligence, fraud, breach of fiduciary duties, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference with a business relationship, conversion of chattels or personal property, and intentional or negligent infliction of emotional distress. (Dkt. No. 12-1). Plaintiffs allege that they own properties at Remainder Plot 47A and 47AB Estate La Grande Princesse, Christiansted, St. Croix and that Defendant Great American provided insurance coverage for those properties. *Id.* at ¶ 6. According to the Amended Complaint, Defendant Great American is wholly owned by Defendant AFG and the insurance on the properties was provided "through" Defendant Siwell doing business as Capital Mortgage Services of Lubbock, Texas ("Capital Mortgage"). *Id.* at ¶¶ 5-6. Plaintiffs allege that, when the properties were damaged in 2017 by Hurricane Maria, Defendant

Great American and Defendant Siwell failed to timely inspect and assess the damage to the properties. *Id.* at ¶¶ 7-8. Due to the alleged delay in action by Defendant Great American and Defendant Siwell, Plaintiffs engaged a public adjuster to quantify their losses and were delayed in making the needed repairs to the properties. *Id.* at ¶¶ 10-11. Plaintiffs allege that they have not received the full payment of the insurance proceeds and Defendant Siwell failed to ensure that Plaintiffs were adequately paid. *Id.* at ¶¶ 14-16. Plaintiffs also allege that the rates charged for their insurance were "exorbitant" and "were not arrived at on a competitive basis." *Id.* at ¶ 18.

All Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. Nos. 28, 30, 32). Plaintiffs have opposed Defendants' Motions to Dismiss. (Dkt. Nos. 38, 40, 48).

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Third Circuit, as articulated in *Connelly v. Lane Constr. Corp.*, employs a three-step process in applying the analysis established by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly

3

give rise to an entitlement to relief."

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 675, 679) (internal citations omitted); *see also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (stating that when ruling on a motion to dismiss for failure to state a claim, courts accept a plaintiff's "factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted)).

## III.    DISCUSSION

### A. Consideration of Exhibits Attached to Motion to Dismiss

The Court must first address whether it may consider the documents Defendant Great American has attached to its Motion to Dismiss. Defendant Great American has presented three exhibits with which Plaintiffs take issue:

(1) Exhibit 1 contains a "Notice of Lender Placed Homeowners (Hazard) Coverage" dated January 19, 2017, "Evidence of Insurance" reflecting Certificate Number GRH0071429 and an effective date of December 17, 2016, and Mortgage Protection Insurance with Policy Number 4091391 ("Master Policy");

(2) Exhibit 2 contains a Mortgage between Plaintiffs and Capital Mortgage Services; and

(3) Exhibit 3 contains a "Notice of Lender Placed Homeowners (Hazard) Coverage" dated April 28, 2016 and "Evidence of Insurance" reflecting Certificate Number GRH0064163 and an effective date of December 17, 2015.[1]

---

[1] Defendant Great American also attached a copy of a judicial opinion in *Scobie v. Flagstar Bank,*

Plaintiffs dispute the authenticity of these documents and argue that the Court may not consider them on a Motion to Dismiss. (Dkt. No. 38 at 2-9).

At the Rule 12(b)(6) stage, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *See id.*; *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) ("Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." (quoting 62 Fed. Proc., L. Ed. § 62:508)); *Claxton v. Oriental Bank (formerly Bank of Nova Scotia)*, Civil Action No. 19-CV-0069, 2022 WL 3683800, at *3 (D.V.I. Aug. 25, 2022) ("District courts may rely on documents appended to a motion to dismiss that are 'integral to . . . the complaint.' That remains true so long as such documents are part of the public record or are 'undisputedly authentic.'" (internal citations omitted)); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[C]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. However, an exception

---

*et al.*, Civil No. 2018-33 (D.V.I. Mar. 29, 2019) as Exhibit 4. Plaintiffs do not dispute that the Court may properly consider judicial opinions for a limited purpose. *See Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.").

to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (quoting *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 and *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (internal quotation marks omitted)).[2]

If a court considers matters outside the scope of the rule articulated above, the motion to dismiss must be converted to a motion for summary judgment. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal] Rule [of Civil Procedure] 56." (quoting Fed. R. Civ. P. 12(d)) (internal quotation marks omitted)). Where a court converts a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* (quoting Fed. R. Civ. P. 12(d)) (internal quotation marks omitted).

With regard to Exhibit 1, Defendant Great American argues that "attaching a copy of the insurance policy is appropriate because it forms the basis of Plaintiffs['] claims." (Dkt. No. 29 at 8).[3]

_____

[2] Courts have explained the rationale for the exception to the general rule: "[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Schmidt*, 770 F.3d at 250; *see also Pension Benefit Guar. Corp.*, 998 F.2d at 1196 ("Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

[3] Defendant Great American argues that, despite what is alleged in the Amended Complaint, there is no contractual relationship between it and Plaintiffs. Instead, Defendant Great American argues that Plaintiffs obtained a mortgage from Defendant Siwell (doing business as Capital Mortgage of Texas) for the properties in dispute, and Exhibit 1 is the insurance policy—referenced in Plaintiffs' Amended Complaint—which is actually a contract between Defendant Great American and

The Amended Complaint asserts that Plaintiffs received insurance coverage from Defendant Great American under Master Policy Number 4091391, Certificate Number GRH0071429. (Dkt. No. 12-1 at ¶ 6). In several places throughout Exhibit 1, that Master Policy Number and Certificate Number are reflected. (Dkt. No. 29-1 at 1, 2, 3). Therefore, seemingly the insurance policy presented by Exhibit 1 is integral to Plaintiffs' claims and explicitly relied on in Plaintiffs' Amended Complaint. *See Schmidt*, 770 F.3d at 249; *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993))).

However, Plaintiffs challenge the authenticity of Exhibit 1 and argue that the Court may not consider it while ruling on Defendants' Motions to Dismiss because Exhibit 1 is not "undisputedly authentic." (Dkt. No. 38 at 3-5, 8-9).[4] Specifically, Plaintiffs argue that "serious questions remain as to the authenticity of the documents attached as Exhibit 1, none of which are addressed to the correct names of the plaintiffs[5] and which documents are internally inconsistent

---

Defendant Siwell covering *only* Defendant Siwell's interest in Plaintiffs' property. (Dkt. No. 29 at 1-2, 8-11).

[4] Plaintiffs first argue that the Court should not consider Exhibit 1 because it was not submitted with an authenticating affidavit. (Dkt. No. 38 at 2-3). While the document was initially submitted without an accompanying authenticating affidavit, on reply, Defendant Siwell submitted a "Declaration Under Oath" from Craig Zahn, the Director of Default Mortgage Servicing for Defendant Siwell. (Dkt. No. 53-1). Mr. Zahn states that he has "reviewed the document filed in this matter by Defendant Great American Assurance Company on October 5, 2020 as Document No. 29-1, and compared it to documents in the files of Siwell. It is a true and correct copy of a Notice of Lender Placed Homeowners (Hazard) Coverage, dated January 19, 2017, from Siwell to the plaintiff Thomas Ainger." (Dkt. No. 53-1 at 2).

[5] Plaintiffs' objection to the document in this regard appears to be that the Notice of Insurance is addressed to "Ainger Thomas" instead of Thomas Ainger. (Dkt. No. 38 at 3).

since they reference insurance policies with different effective dates, which discrepancies cannot be answered without plaintiffs taking discovery." *Id.* at 4-5.

The undisputedly authentic requirement has been strictly interpreted. *See, e.g.*, *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221-22 (N.D.N.Y. 2014) ("The 'no dispute' requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible. . . . While some of [plaintiff's] objections appear conclusory and ill-founded . . . the Court may consider the Tape Copy only if there are 'no disputes' regarding its authenticity and accuracy."); *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 415, 416 n.4 (S.D.N.Y. Mar. 2, 2010) (declining to consider documents because plaintiffs disputed their authenticity even when the plaintiffs' objections were "of questionable viability" and "less than genuine").[6] Thus, even if the objections may, on their face, appear questionable, the documents would not qualify as "undisputedly authentic." *Fine*, 11 F. Supp. 3d at 221-22. Accordingly, because Plaintiffs object to the authenticity of Exhibit 1, the Court cannot consider the document for purposes of a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *See Bruni*, 824 F.3d at 360; *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 497 (E.D. Pa. 2018) ("[I]t is not enough that the complaint rely upon the extrinsic document. The document must also be 'undisputedly authentic.'" (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d at 368 n.9)), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020); *Roma Concrete Corp. v. Pension Assocs.*, 384 F. Supp. 3d 507, 512 n.3 (E.D. Pa. 2019) ("As the 2017 Contract is not referenced in the Complaint and Plaintiffs challenge its authenticity, the Court cannot consider the 2017 Contract in ruling on the instant Motion without converting the Motion to Dismiss into a Motion for Summary Judgment . . . .");

---

[6] Of course, as with everything else, Rule 11 would continue to govern.

8

*Cope v. Kohler*, Civil Action No. 12-5188, 2015 WL 3952714, at *5 (D.N.J. June 29, 2015) (declining to consider papers submitted with a motion to dismiss when Plaintiff disputed whether documents were accurate and deliberately fabricated).

The Court further finds that, at this stage in the proceedings, the Court also cannot consider Exhibit 3. This Exhibit contains a "Notice of Lender Placed Homeowners (Hazard) Coverage" dated April 28, 2016 and "Evidence of Insurance" that are applicable to an insurance policy effective from December 17, 2015 to December 17, 2016. (Dkt. No. 29-3). Therefore, on the face of the documents, they are not integral to the Amended Complaint—which is based on insurance coverage for property allegedly damaged in September 2017. (Dkt. No. 12-1 at ¶ 7). Indeed, Defendant Great American uses Exhibit 3 to argue that the Notice of Lender Placed Homeowners (Hazard) Coverage served to put Plaintiffs on notice regarding the applicability of the policy:

> The documents also establish that Great American did not make any representations to Plaintiffs about the insurance contract, or anything else, and that Plaintiff made no payments to Great American. By letter dated April 28, 2016, Capital Mortgage put Plaintiffs on notice that they had no rights under the Master Insurance Policy that Capital Mortgage decided to purchase to protect its interest in the loan balance secured by the Mortgaged Properties. The Notice clearly shows Plaintiffs did *not* pay any premiums to Great American. The April 28, 2016 Notice of Lender Placed Homeowners (Hazard) Coverage, attached as **Exhibit 3**, informed Plaintiffs that Capital Mortgage had purchased a lender placed policy in accordance with their loan agreement, charged the cost to their escrow, and that the "*insurance only protects Capital Mortgage Services and not [Plaintiffs].*"

(Dkt. No. 29 at 11) (emphasis in original). While the documents in Exhibit 3 may be relevant to Plaintiffs' knowledge of the coverage of the insurance policy, this does not make them documents "integral to or explicitly relied upon in the complaint." *See Schmidt*, 770 F.3d at 249; *see also id.* at 249-50 ("The defendants argue that [press releases and updates] contain all the information Schmidt needed to ascertain his injury. While that may be true, these materials may not be considered at the motion to dismiss stage. They are not integral to the complaint—the complaint was not 'based' on press releases or updates from Genaera Liquidation Trust, but rather on sales

transactions.").

With regard to Exhibit 2, Defendant Great American argues that the Court may consider it because "Plaintiffs' mortgage is a matter of public record, filed with the Recorder of Deeds, as indicated by the stamp and document number." (Dkt. No. 29 at 9).

In considering a 12(b)(6) Motion, courts may look at public records. *Pension Ben. Guar. Corp.*, 998 F.2d at 1196. Public records include "documents from the Virgin Islands' Recorder of Deeds' Office." *Friedberg v. Barefoot Architect, Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1197); *see also Claxton*, 2022 WL 3683800, at *3 ("[B]ecause title 33, section 2362 of the Virgin Islands Code requires that mortgages be publicly recorded, the mortgage agreement at issue here is a matter of public record.").

Plaintiffs "dispute the authenticity of this document as constituting the totality of the documents that represent the basis for any 'mortgage indebtedness' or 'mortgage payments' referenced in the [First Amended Complaint]." (Dkt. No. 38 at 5).[7] Additionally, Plaintiffs argue that "[t]he authenticity of this document is also in dispute since Exhibit 2 does not contain a Loan Number anywhere in it, thus whether this document constitutes an authentic mortgage document covering a particular loan for plaintiffs cannot be determined from the face of the document itself." *Id.* at 6.[8] Regardless of the authenticity of the document or whether the mortgage makes up the

---

[7] Plaintiffs also argue that the Court should not consider Exhibit 2 because it was not submitted with an authenticating affidavit. (Dkt. No. 38 at 2-3). As noted earlier, while the document was initially submitted without an accompanying authenticating affidavit, on reply Defendant Siwell submitted a "Declaration of Counsel." (Dkt. No. 53-2). In the Declaration, counsel for Defendant Siwell states based on his "own personal knowledge that Docket Entry No 29-2 is a true and correct copy of a Mortgage recorded at the office of the Recorder on March 21, 2013 as Doc. No. 2013000924." *Id.* at 2.

[8] The parties dispute whether Exhibit 2 is "integral to the dispute." (Dkt Nos. 29 at 9; 38 at 5). However, for purposes of Exhibit 2, proffered under the public record exception, the question is whether the proffered document is a public record, not whether it meets the criteria for the integral

entirety of the mortgage indebtedness referenced in the Amended Complaint, the Court finds that it need not look at Exhibit 2 to resolve the parties' arguments presented in the Motions to Dismiss.

Having determined that the Court cannot consider Exhibits 1 and 3 attached to Defendant Great American's Motion to Dismiss, and that it need not consider Exhibit 2 to resolve the issues raised by the Motions to Dismiss, the Court will proceed to address the merits of the Motions. Additionally, the Court declines to convert the instant Motions to Dismiss into motions for summary judgment.

### B. Defendant Siwell's Motion to Dismiss

Defendant Siwell moves to dismiss all claims in Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. Nos. 32; 35 at 1).[9]

Before addressing the arguments related to each of the causes of action asserted in the Amended Complaint, the Court first notes that Plaintiffs argue that the Court should deny Defendant Siwell's Motion to Dismiss because Defendant Siwell has waived its arguments by failing to conduct an independent analysis under *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011) to determine the applicable legal standard that should be applied to Plaintiffs' claims. (Dkt. No. 48 at 7-11).[10] Plaintiffs cite to *Antilles School, Inc. v. Lembach*, 64 V.I. 400 (2016) and

---

document exception.

[9] The Court notes that the parties do not dispute that Virgin Islands law applies to this matter.

[10] In *Banks*, the Virgin Islands Supreme Court held that, in the absence of precedent on a common law rule established by the Supreme Court of the Virgin Islands, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt. *See Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (2014)). "In conducting a *Banks* analysis, a court balances 'three non-dispositive factors': (1) whether any courts [in the Virgin Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts

*Libien v. MIFR (Virgin Islands), Inc.*, No. ST-15-CV-107, 2016 WL 7017642 (V.I. Super. Ct. Nov. 28, 2016). (Dkt. No. 48 at 8). The Virgin Islands Supreme Court, citing Virgin Islands Supreme Court Rule 22(m)—currently V.I. Rule App. P. 22(m)[11]—has emphasized that parties are obligated to make all necessary legal arguments in cases on appeal, including a "non-perfunctory analysis of all three *Banks* factors" when a *Banks* analysis is required. *Antilles School, Inc.*, 64 V.I. at 428 n.13.

The Court agrees that counsel is responsible for providing a sound legal analysis for its arguments, including a *Banks* analysis when necessary. Here, however, Defendant Siwell has cited several Superior Court opinions which have applied *Banks* in determining the appropriate common law legal standards applicable to the asserted claims. Accordingly, the Court concludes that the arguments asserted by Defendant Siwell are supported by sufficient legal precedent to preserve its arguments before this Court. *See Libien*, 2016 WL 7017642, at *2 & n.11 (addressing merits of legal proposition after noting that defendant cited only persuasive authority). Thus, the Court rejects Plaintiffs' waiver argument.

### 1. Breach of Contract (Count I)

Count I of Plaintiffs' Amended Complaint is titled "Breach of Express and Implied Contract." (Dkt. No. 12-1 at 6). Under Virgin Islands law, the elements of a claim for breach of contract are: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (2017).

---

from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id.* (citing *Simon v. Joseph*, 59 V.I. 611, 623 (2013)).

[11] Rule 22(m) provides, in part: "Issues that were . . . raised or objected to but not briefed, or . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal . . . ." V.I. Rule App. P. 22(m).

Plaintiffs argue that they have sufficiently alleged a breach of contract claim because they have alleged that:

> As stated in the FAC at ¶6, Defendant Great American issued and sold, and provided insurance in connection with the plaintiffs' properties in the U.S. Virgin Islands, *inter alia*, through Defendant Siwell Inc. dba Capital Mortgage Services of Lubbock, Texas ("Capital Mortgage") and that all references to ["]Defendant Great American["] thereafter in the FAC, "shall include Capital Mortgage as well" Therefore, since the FAC states that all references to Defendant Great American in the FAC is also meant to "include Capital Mortgage [Siwell] as well", for the reasons previously briefed in the Plaintiffs' "Opposition to Great American Assurance Co.'s Motion to Dismiss" . . . , which are incorporated by reference herein, the FAC adequately pleads a breach of contract claim against Defendant Siwell.

(Dkt. No. 48 at 11-12). Based on this statement, Plaintiffs are apparently relying on the insurance contract for their breach of contract claim, rather than a breach of any mortgage agreement between Defendant Siwell and Plaintiffs.[12]

The Amended Complaint states that the insurance coverage from Defendant Great American was provided "through Defendant Siwell" and that "[e]very year, . . . Defendant Great American would place the insurance and take premiums to pay for it from the Plaintiffs through Siwell." (Dkt. No. 12-1 at ¶¶ 6, 18). Such an allegation is sufficient to plausibly state a claim that Defendant Siwell was a party to an alleged contract regarding the provision of insurance.

The Amended Complaint also alleges that "Plaintiffs' properties were insured accordingly, covering the risks of windstorms and hurricanes." *Id.* at ¶ 7. Additionally, Plaintiffs allege that Defendant Siwell failed in its duties to provide insurance in several ways including "fail[ing] to timely respond to the Plaintiffs," "fail[ing] to send a qualified adjuster to investigate and inspect

---

[12] While there are references in the Amended Complaint to a mortgage debt between Plaintiffs and Defendant Siwell, Plaintiffs do not argue that their breach of contract claim is based on the mortgage agreement. Indeed, Plaintiffs criticize Defendant Great American for making "the bald unsupported claim that [the mortgage document] is 'integral to the dispute.'" (Dkt. No. 38 at 5).

the damage and losses covered by the insurance at issue herein," and "refusing to undertake a complete inspection and assessment of the losses and damage." *Id.* at ¶ 8. Plaintiffs further allege that "they have not received the full payment of insurance proceeds" and "[be]cause of . . . Siwell's delays and failures, the Plaintiffs were unable to make needed repairs, thereby adversely affecting their ability to generate income from the properties." *Id.* at ¶¶ 11, 16.

In view of the foregoing, the Court finds that the Amended Complaint plausibly alleges all four elements of a breach of contract claim—agreement, duty, breach, and damages. Accordingly, the Court will deny Defendant Siwell's Motion to Dismiss Count I.[13]

**2. Estoppel (Count II)**

Count II of Plaintiffs' Amended Complaint is titled "Estoppel." (Dkt. No. 12-1 at 7-8).[14] The Supreme Court of the Virgin Islands has not yet addressed the elements of a claim for promissory estoppel. However, courts in the Virgin Islands have consistently applied the standard for promissory estoppel as established in the Restatement (Second) of Contracts § 90. *See Whitaker v. Martin*, Civil No. 2020-24, 2020 WL 7481783, at *4 (D.V.I. Dec. 18, 2020) (conducting *Banks* analysis and finding that Restatement (Second) of Contracts § 90 represents the soundest rule for the Virgin Islands); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 560 (D.V.I. 2004); *Banco Popular de Puerto Rico v. Panzer*, No. ST-2015-CV-00056, 2021 WL 3355327, at *6 (V.I. Super. Ct. June 23, 2021); *Christian v. Reynolds*, No. SX-06-CV-035, 2009 WL

---

[13] Defendant Siwell argues that "[a]lthough the caption refers to breach of contract, this count actually appears to allege fraudulent misrepresentation." (Dkt. No. 35 at 8). The Court addresses the potential claim for fraudulent misrepresentation below.

[14] Defendant Siwell interprets the claim titled "Estoppel" in the Complaint to mean "promissory estoppel" (Dkt. No. 35 at 10), and Plaintiffs do not dispute that characterization, (Dkt. No. 48 at 12).

10644332, at *4 n.6 (V.I. Super. Ct. Oct. 7, 2009). Under the Restatement (Second) of Contracts § 90, a plaintiff must prove three elements: "(1) the promisor made a promise that he should have reasonably expected to induce forbearance; (2) the promisee refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Charleswell*, 308 F. Supp. 2d at 560; *accord Banco Popular de Puerto Rico*, 2021 WL 3355327, at *6; *Virgin Islands Port Auth. v. Four Star Aviation, Inc.*, No. ST-09-CV-272, 2010 WL 11718584, at *2 (V.I. Super. Ct. July 30, 2010).

Defendant Siwell argues that Plaintiffs' promissory estoppel claim must be dismissed because the "vague allegations, which fail to identify any 'promise' with the required specificity, are insufficient to state a claim." (Dkt. No. 35 at 10-11). Plaintiffs argue that the Amended Complaint adequately pleads a promise, relying on paragraphs 22, 25, 27, 29, and 61. (Dkt. No. 48 at 12).

The Court agrees with Defendant Siwell that the Amended Complaint does not identify any specific promise that was made by Defendant Siwell, but instead refers generally to alleged promises and misrepresentations without any indication of what was promised or represented. (*See, e.g.*, Dkt. No. 12-1 at ¶ 27 ("The Defendants made express promises to the Plaintiffs that induced them, *inter alia*, to work with the Defendants . . . . The Plaintiffs detrimentally relied on the promises, representations, omission of material facts, and expertise of the Defendants in making their decisions to work with the Defendants to satisfy the insurance needs relating to their properties."); *id.* at ¶ 22 ("The Plaintiffs detrimentally relied on the promises, representations, omission of material facts, and expertise of the Defendants in making the decisions to insure their properties . . . ."); *id.* at ¶ 29 ("However, the Defendants' promises, representations and negligent omissions were false and unreasonable.")). The Court cannot rely on such conclusory allegations

that "promises" were made without any factual allegations as to what promises were allegedly made. Moreover, given that the Amended Complaint fails to state what promises were made, the Amended Complaint also fails to allege facts to plausibly suggest that the promisee relied on any such promises. The Court will therefore grant Defendant Siwell's Motion to Dismiss Count II.

### 3.  Negligent Misrepresentation (Count III)

Count III of Plaintiffs' Amended Complaint is titled "Negligence." (Dkt. No. 12-1 at 8). While the Count is captioned as such, Defendant Siwell argues that it, in fact, "appears to allege negligent misrepresentation[]." (Dkt. No. 35 at 11). Plaintiffs do not argue that they are alleging a claim of negligence, but argue instead that "[t]he FAC adequately pleads a negligent representation claim." (Dkt. No. 48 at 13).

Under Virgin Islands law, "one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest, supplies false information for the guidance of others, is subject to liability for pecuniary loss caused to those others due to the others' justifiable reliance on the information, but only if he or she failed to exercise reasonable care or competence in obtaining or communicating the information." *Merchants Com. Bank v. Oceanside Vill., Inc.*, 64 V.I. 3, 28 (V.I. Super. Ct. 2015) (conducting *Banks* analysis and adopting the rule as the soundest for the Virgin Islands);[15] *see also Turnbull v.*

---

[15] Plaintiffs take issue with the completeness of the *Banks* analysis conducted in *Merchants Com. Bank*. (Dkt. No. 48 at 9 n.20). Specifically, Plaintiffs argue that the *Merchants* court makes statements about majority positions, without supporting citations that show all of those majority positions. *Id.* The Court disagrees with Plaintiffs' argument that the *Banks* analysis in *Merchants* was inadequate. It is clear that the court in *Merchants* was citing several cases as examples of the majority position, as opposed to citing each case constituting the majority position. Nothing precludes such an approach. Regardless, since *Merchants*, other Virgin Islands courts have affirmed the *Banks* analysis performed in *Merchants* and adopted the same elements. *See Turnbull v. Univ. of the Virgin Islands*, No. ST-07-CV-239, 2016 WL 1047893, at *4 & n.6 (V.I. Super. Ct. Mar. 2, 2016) ("[T]he Court is persuaded that Judge Francois's *Banks* analysis in *Merchants* is sound and adopts her holding as its own here."); *Fuller v. Roswell Properties LLC, Ltd.*, No. ST-

16

*Univ. of the Virgin Islands*, No. ST-07-CV-239, 2016 WL 1047893, at *4 (V.I. Super. Ct. Mar. 2, 2016) (stating that in order to state a claim for negligent misrepresentation "[the plaintiff] must demonstrate that 1.) [d]efendants supplied her with false information for her guidance; 2.) that they did so in the course of their employment; 3.) that they failed to exercise reasonable care or competence in obtaining or communicating the information; 4.) that [the plaintiff] justifiably relied on the information; and 5.) that [the plaintiff's] reliance caused pecuniary harm.").

"Negligent misrepresentation 'requires an *express* representation which is false or misleading at the time it is made.'" *Chestnut v. Goodman*, 59 V.I. 467, 475-76 (2013) (quoting *Addie v. Kjaer*, 51 V.I. 507, 511 (D.V.I. Feb. 23, 2009)) (emphasis in original). The "alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Id.* (quoting *Addie*, 51 V.I. at 511) (internal quotation marks omitted). While the Amended Complaint alleges in conclusory fashion that "Defendants made false representations to the Plaintiffs and failed to disclose material information to them" (Dkt. No. 12-1 at ¶ 29), it does not contain any factual allegations as to what these representations were; any factual support for the material information allegedly withheld; or any facts to support any alleged absence of reasonable care in obtaining, communicating, or failing to disclose the information. Thus, the Court cannot rely on these vague and conclusory allegations which simply assert that false representations were made or material information was not disclosed. *See Rondon v. Caribbean Leasing & Eco Transp., Inc.*, 74 V.I. 397, 416 (V.I. Super. Ct. 2021) (finding that a plaintiff failed to state a claim for negligent misrepresentation because "[the plaintiff] generalizes

---

16-CV-438, 2018 WL 1176867, at *5 (V.I. Super. Ct. Mar. 5, 2018) ("The Court adopts the Superior Court's analysis in *Merchants Bank* . . . to prove liability for negligent misrepresentation . . . .").

that Defendants made false and misleading misrepresentations about selling him a car that worked that were intended to defraud and deceive him. He does not allege what facts Defendants misrepresented to him, and he does not allege or demonstrate that they failed to exercise reasonable care in communicating with him. None of the facts asserted in his complaint refer to any express misrepresentation about the quality and fitness of the car."); *Addie*, 51 V.I. at 512 (granting a motion to dismiss a claim for negligent misrepresentation because "[c]rucially, missing from Count III is any allegation that the Sellers made a representation of fact that was false at the time it was made."). Accordingly, the allegations in the Amended Complaint fail to state a claim for negligent misrepresentation and Count III will therefore be dismissed as to Defendant Siwell.

### 4. Fraud (Count IV)

Count IV of Plaintiffs' Amended Complaint is titled "Fraud." (Dkt. No. 12-1 at 9). Under Virgin Islands law, a tort claim for fraud is known as fraudulent misrepresentation. *Merchants Com. Bank*, 64 V.I. at 16 ("'Fraud' is defined as 'a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.' In the Virgin Islands, this principle expresses itself as a cause of action for fraudulent misrepresentation." (internal citation omitted)); *Rondon*, 74 V.I. at 413-14 (noting that fraud and fraudulent misrepresentation have the same elements). The Supreme Court of the Virgin Islands has recognized the elements of the tort of fraudulent misrepresentation as: "(1) [the defendant] misrepresented a material fact, opinion, intention, or law; (2) that it knew or had reason to believe was false; (3) and was made for the purpose of inducing [the plaintiff] to act or refrain from acting; (4) which [the plaintiff] justifiably relied on; and (5) which caused [the plaintiff] a pecuniary loss." *Jahleejah Love Peace v. Banco Popular de Puerto Rico*, 75 V.I. 284, 291 (2021) (largely agreeing with *Banks* analysis performed in *Merchants Com. Bank* case).

In federal court, a plaintiff additionally must comply with Rule 9, which requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Coulter v. Paul Laurence Dunbar Community Center*, 765 F. App'x 848, 851 (3d Cir. 2019) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010)) (discussing the "heightened pleading requirement[s]" of Rule 9(b)). To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Pricaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)) (internal citations omitted). However, a plaintiff is not required to allege every material detail as long as it "pleads the circumstances of the fraud with sufficient particularity to place defendants on notice of the precise misconduct with which they are charged." *Discover Growth Fund, LLC v. Fiorino*, Civil Action No. 20-00351, 2021 WL 236595, at *4 (D.N.J. Jan. 25, 2021) (internal citations and quotation marks omitted).

Defendant Siwell argues that the Amended Complaint does not state a claim for fraudulent misrepresentation because there are only conclusory assertions "without any specifics as to time, place, people involved or contents of the false representation." (Dkt. No. 35 at 8). Plaintiffs do not respond to Defendant Siwell's argument regarding their fraud claim, except to argue that Defendant Siwell has not adequately supported its argument with legal authority. (Dkt. No. 48 at 8 n.21).

While the Amended Complaint makes reference to alleged promises, representations, and omissions made by Defendants, it does not provide anything beyond vague and conclusory allegations. It does not provide any specifics about who—including specifically which Defendant—is implicated; when or where the alleged misrepresentations occurred; or any factual

basis for any alleged omissions. (*See, e.g.*, Dkt. No. 12-1 at ¶ 22 ("The Plaintiffs detrimentally relied on the promises, representations, omission of material facts, and expertise of the Defendants in making the decisions to insure their properties, and to make mortgage payments, interest payments and the like to Sweill [sic] relating to their properties; and the Defendants accepted monies from the Plaintiffs on that basis."); *id.* at ¶ 24 ("[T]he representations made by the Defendants were false. The Defendants concealed and suppressed material facts, such as the facts that they knew that the charges for these policies were excessive and not the result of good faith practices; and they had a pattern and practice of charging the Plaintiffs and other customers on that basis."); *id.* at ¶ 33 (same)).

The Court finds that such vague and conclusory allegations do not meet the pleading requirements under *Iqbal/Twombly* or Rule 9. *See Focus Consulting Grp., Inc. v. Merchants Mkt., Inc.*, No. Civ. 2003-127, 2003 WL 23004999, at *2 (D.V.I. Dec. 15, 2003) ("[T]he plaintiff's complaint fails to satisfy even the most generous interpretation of Rule 9(b). Neither the amended complaint nor the proposed second amended complaint state who made the alleged fraudulent statements, and instead both complaints simply refer to 'Defendants,' without specifying which of the eight named defendants made what statement. Furthermore, the plaintiff gives the defendants no information about the context in which the statements were made . . . ."); *Canton v. Virgin Islands Humans. Council*, No. ST-12-CV-279, 2017 WL 3203443, at *10 (V.I. Super. Ct. July 26, 2017) ("The Complaint does not provide any falsehood or misrepresentation told by Defendant in order to convince Plaintiff to take the Executive Director position. Therefore, this Court determines Count V does not satisfactorily plead a claim for fraudulent misrepresentation."). Accordingly, Count IV will be dismissed as to Defendant Siwell.

### 5. Breach of Fiduciary Duty (Count V)

Count V alleges a breach of fiduciary duty by Defendants. (Dkt. No. 12-1 at 10). Under Virgin Islands law, the elements of a claim for breach of fiduciary duty are: "1) that a fiduciary relationship exists, 2) that the fiduciary breached the duty imposed by said relationship, 3) that the plaintiff must have been harmed, and 4) that the fiduciary's breach was a proximate cause of said harm." *Ebner v. Petrohan*, No. ST-14-CV-537, 2018 WL 3996888, at \*7 (V.I. Super. Ct. Aug. 14, 2018) (conducting a *Banks* analysis and adopting this standard as the best rule for the Virgin Islands); *see also Watts v. Blake-Coleman*, Civil No. 2011-61, 2012 U.S. Dist. LEXIS 43454, at \*12-13 (D.V.I. Mar. 29, 2012); *Ebner v. Bank of Nova Scotia*, No. 18-cv-00002, 2019 WL 404969, at \*6 (D.V. I. Jan. 31, 2019), *aff'd* 795 F. App'x 107 (3d Cir. 2020).

In the Virgin Islands, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Arvidson v. Buchar*, 72 V.I. 638, 645 (V.I. Super. Ct. 2020) (quoting *Guardian Insurance Co. v. Khalil*, 63 V.I. 3, 18 (V.I. Super. Ct. 2012)) (internal quotation marks omitted). "Virgin Islands courts have been cautious in finding the existence of a fiduciary relationship even as between a bank and one of its customers." *Ebner*, 2019 WL 404969, at \*6 (citing *Watts*, 2012 U.S. Dist. LEXIS 43454, at \*14) (internal quotation marks omitted). Courts have also been cautious in finding the existence of a fiduciary relationship in cases which involve routine arms-length transactions or contracts. *See, e.g.*, *Tekman v. Berkowitz*, 639 F. App'x 801, 806 (3d Cir. 2016) (accountant did not have a fiduciary relationship with the plaintiffs as the accountant did not have control of business and was not in a position to exercise undue influence); *LLP Mortg., Ltd. v. Caledonia Springs, Inc.*, Civil Action No. 02-0172, 2007 WL 6035933, at \*10 (D.V.I. Nov. 6, 2007) (presumption that lender and borrower operate at arms-length and parties act in their own

interest); *Jo-Ann's Launder Ctr., Inc. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 392 (D.V.I. 1994) ("They contend that Chase's loan officer, Wingrove Lynton, did work on behalf of the Estradas which was beyond his normal activities, thereby creating a fiduciary relationship. Even if true, however, these facts do not subvert the presumption that Chase and the Estradas operated at arms-length and the parties each acted in their own interest.").

Defendant Siwell argues that the Amended Complaint fails to state a claim for breach of fiduciary duty because Plaintiffs fail to demonstrate a relationship between Defendant Siwell and themselves, or what Defendant Siwell did to waste any monies entrusted to them. (Dkt. No. 35 at 13). Plaintiffs argue that "[t]he FAC adequately pleads, that Siwell owed fiduciary duties to [P]laintiffs because [P]laintiffs placed trust and confidence in Siwell to properly represent the true nature and extent of its business and financial activities and expertise, and to prudently and properly use the monies that were entrusted to Siwell by [P]laintiffs." (Dkt. No. 48 at 14).

As noted above, the Amended Complaint alleges that a contract existed for the provision of insurance between Plaintiffs, Defendant Great American, and Defendant Siwell. Courts in the Virgin Islands have recognized that "*under certain circumstances*, a fiduciary duty can arise" between insurers, insurance brokers, and the insured. *See Charleswell*, 308 F. Supp. 2d at 573 (emphasis added). "[T]he indicia of a fiduciary relationship between an insured and insurer include 'the exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another.'" *Id.* (quoting *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101, 1112 (S.D. Iowa 1998)); *see also Helman v. Marriott Int'l., Inc.*, Civil No. 2019-cv-036, 2020 WL 4506199, at *6 (D.V.I. Aug. 5, 2020) ("A fiduciary relationship has also been found to exist between an insured and an insurer based on the element of control." (citing *Charleswell*, 308 F. Supp. 2d at 573)). Indeed, what is normally viewed as an arms-length contract

does not establish a fiduciary relationship under common law absent some exercise of "substantial control" by one party over the other party's affairs. *See, e.g.*, *Helman*, 2020 WL 4506199, at *7 (degree of control exercised by Management Company over plaintiffs' properties sufficient to support a fiduciary relationship); *Jo-Ann's Launder Ctr., Inc*, 854 F. Supp. at 392 ("A fiduciary relationship may arise if the lender gains substantial control over the borrower's business affairs, such as participating in the borrower's day-to-day management."); *Charleswell*, 308 F. Supp. 2d at 573. Similarly, many jurisdictions have noted that a fiduciary relationship cannot be established by the unilateral actions of one party in choosing to rely on another without the other's knowledge or acceptance of that responsibility. *See, e.g.*, *Abercrombie v. College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) ("[A]bsent an allegation of a special relationship, mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship.") (cited with approval in *Trianco, LLC v. IBM*, 271 F. App'x 198, 204 (3d Cir. 2008)); *Pool v. Farm Bureau Town & Country Ins. Co. of Mo.*, 311 S.W.3d 895, 907 (Mo. Ct. App. 2010) ("Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance." (quoting *Farmers Ins. Co., Inc. v. McCarthy,* 871 S.W.2d 82, 87 (Mo. App. E.D. 1994) (internal quotation marks omitted)); *Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 977 N.E.2d 122, 127 (Ohio Ct. App. 2012) (independent insurance agency, which arranges personal and commercial lines of coverage, did not owe fiduciary obligations to insured).

The Amended Complaint does not include allegations that embody any facts suggesting indicia of a fiduciary relationship. The Amended Complaint includes factual allegations that plausibly suggest the provision of insurance through a contract, and nothing more. Allegations that Plaintiffs unilaterally placed their trust in Defendant Siwell are insufficient to plausibly create a

fiduciary duty. *See McLaughlin v. Indep. Ins. Advisors*, No. ST-98-CV-338, 2012 V.I. LEXIS 160, at *10 (V.I. Super. Ct. June 22, 2012) ("The mere allegation of a fiduciary duty cannot survive a motion to dismiss. The Third Circuit has established that 'absent an allegation of a special relationship, mere assertions of trust and confidence are insufficient to support a claim of a fiduciary relationship.'" (quoting *Trianco, LLC*, 271 F. App'x at 204)).

Because the Amended Complaint only alleges that Plaintiffs relied on Defendant Siwell for its "expertise" without any further factual allegations, the Court will dismiss Plaintiffs' breach of fiduciary duty claim as to Defendant Siwell.

### 6. Breach of the Covenant of Good Faith and Fair Dealing (Count VI)

Count VI alleges that there was a breach of the implied covenant of good faith and fair dealing. (Dkt. No. 12-1 at 11). Specifically, the Amended Complaint alleges that Defendants breached the duty of good faith and fair dealing by:

> (a) Assessing excessive, unreasonable and unnecessary insurance policy premiums against the Plaintiffs, and misrepresenting the reason for the cost of the policies;
>
> (b) Failing to timely respond to the Plaintiffs, and failing to send a qualified adjuster to investigate and inspect the damage and losses covered by the insurance at issue herein, and refusing to undertake a complete inspection and assessment of the losses and damage; and
>
> (c) Failing to adequately and timely determine the full nature, scope and extent of the damage and losses to the Plaintiffs resulting from Hurricanes Maria and Irma, and to compensate the Plaintiffs accordingly.

*Id.* at ¶ 43.

Under Virgin Islands law, "the implied duty of good faith and fair dealing arises by implication through the existence of a contract itself." *Moore v. United States V.I. Dep't of Tourism*, Civil Action No. 2014-0081, 2020 U.S. Dist. LEXIS 157896, at *51 (D.V.I. Aug. 31, 2020) (quoting *Chapman v. Cornwall*, 58 V.I. 431, 441 (2013)). "The duty of good faith limits the

parties ability to act unreasonably in contravention of the other party's reasonable expectations.'" *Id.* (quoting *Chapman*, 58 V.I. at 441) (internal quotation marks omitted).

To state a claim for breach of the covenant of good faith and fair dealing under Virgin Islands law, a plaintiff must first allege the existence of a contract. *See Gardiner v. St. Croix Dist. Governing Bd. of Dirs.*, 859 F. Supp. 2d 728, 736 (D.V.I. 2012) (citing *LPP Mortg. v. Prosper*, 50 V.I. 956, 960 (D.V.I. 2008)); *Smith v. Meade*, Civil No. 2021-76, 2022 WL 872196, at *3 (D.V.I. Mar. 24, 2022); *Arvidson v. Buchar*, 71 V.I. 277, 337 (V.I. Super. Ct. 2019). Defendant Siwell argues that the Amended Complaint fails to state a claim for a breach of the covenant of good faith and fair dealing because Plaintiffs "do not claim that they are in a contractual relationship with Siwell." (Dkt. No. 35 at 14). However, as noted above, the Court finds that the Amended Complaint plausibly states that a contractual relationship existed between Defendant Siwell and Plaintiffs for the provision of insurance for Plaintiffs' property.

Further, the Supreme Court of the Virgin Islands has instructed that "[a] successful claim . . . requires proof of acts amounting to fraud or deceit." *Chapman*, 58 V.I. at 441-42 (quoting *Pennick v. V.I. Behavioral Serv., Inc.,* No. 2006-0060, 2012 WL 593137, at *3 (D.V.I. App. Div. Feb. 22, 2012)) (internal quotation marks omitted); *accord Stapleton v. WenVI, Inc.*, Civil Action No. 2012-035, 2014 U.S. Dist. LEXIS 103626, *6-7 (D.V.I. July 30, 2014); *Benjamin v. Gov't of the V.I.*, No. ST-19-CV-323, 2020 V.I. LEXIS 27, at *12 (V.I. Super. Ct. Mar. 16, 2020).[16]

---

[16] The Court notes that courts within the Virgin Islands have also permitted claims for breach of the covenant of good faith and fair dealing to proceed without a showing of fraud or deceit. *See, e.g.*, *Merchants Com. Bank*, 64 V.I. at 35 ("[A] party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained. The soundest rule of law for the Virgin Islands is that allegations of same are sufficient to allege a plausible breach of said covenant."); *Arvidson v. Buchar*, 71 V.I. 277, 337 (V.I. Super. Ct. 2019) ("To prevail under the Virgin Islands' iteration of this claim, [the plaintiff] must show that (1) a valid contract exists between the parties and (2) acts committed by the [defendant] amount to fraud or deceit *or an unreasonable contravention of the parties' reasonable expectations*

Plaintiffs argue that this second element is satisfied because the Amended Complaint alleges "fraud or deceit" in that Defendant Siwell "knowingly, maliciously and oppressively and with intent to defraud misrepresented, omitted and concealed material facts from plaintiffs. Siwell knew that the representations it and the other defendants were making to plaintiffs were false, and that it was concealing and suppressing material facts." (Dkt. No. 48 at 15 (citing Dkt. No. 12-1 at ¶¶ 29, 32-35, 37-40, 43(a), 45-47, 55-57, 59 and 62)). As noted above, while the Amended Complaint refers to misrepresentations and promises, the allegations are conclusory and lack any factual support. Thus, the Amended Complaint does not plausibly state a claim for a breach of the covenant of good faith and fair dealing and the Court will grant Defendant Siwell's Motion to Dismiss Count VI. *See Moore*, 2020 U.S. Dist. LEXIS 157896, at *53 ("Nor has Plaintiff cited to any facts that establish that Defendant engaged in acts amounting to fraud or deceit. Simply inserting the word 'false' or 'fraudulent' in front of Plaintiff's various allegations does not satisfy the elements for a claim of fraud—which must be pled with particularity.").

### 7. Unjust Enrichment (Count VII)

Count VII of Plaintiffs' Amended Complaint asserts a claim for "Unjust Enrichment." (Dkt. No. 12-1 at 12-13).

Under Virgin Islands law, the elements of a claim of unjust enrichment are: "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the

---

*under the contract*." (emphasis added)); *Firstbank P.R. v. Webster*, No. ST-12-CV-239, 2013 V.I. LEXIS 5, at *8 (V.I. Super. Ct. Jan. 17, 2013) ("Defendants had a reasonable expectation that their private financial information, submitted to Firstbank in order to acquire a loan, would remain confidential. As a result. Defendants' allegation that Firstbank improperly disclosed their private financial information to a third party states a viable claim for breach of the duty of good faith and fair dealing that is sufficient to survive a motion to dismiss."). However, the Court will follow the instruction of the Virgin Islands Supreme Court, that the claim requires a showing of fraud or deceit.

defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 779-80 (2014); *accord Fuller v. Roswell Props. LLC, Ltd.*, No. ST-16-CV-438, 2018 WL 1176867, at *8 (V.I. Super. Ct. Mar. 5, 2018). "Unjust enrichment is an equitable quasi-contract cause of action, imposing liability where there is no enforceable contract between the parties 'but fairness dictates that the plaintiff receive compensation for services provided'" *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 251 (2014) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.,* 747 A.2d 600, 607 (Md. 2000)).

Defendant Siwell first argues that the Complaint fails to allege a claim because (1) the "complaints about the cost of insurance . . . [are] barred by the filed-rate doctrine." (Dkt. No. 35 at 15). Plaintiffs argue that Virgin Islands law has not recognized the filed-rate doctrine, and otherwise "it is an affirmative defense which is not properly raised in a Rule 12(b)(6) motion." (Dkt. No. 48 at 16-17).

Regarding, Defendant Siwell's first argument, the Third Circuit has described the filed-rate doctrine as follows:

> States regulate the insurance market to see that insurers don't charge too much (lest they earn exorbitant profits), nor too little (lest they be rendered insolvent because of unanticipated claims), nor discriminate unfairly against certain consumers. So states generally require insurers issuing policies in their states to file rates they will charge with an administrative agency. And the filed-rate doctrine "forbids" an insurer from "charg[ing] rates . . . other than those properly filed with the appropriate . . . regulatory authority." The flipside of the filed-rate doctrine "provides that a rate filed with . . . a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers."

*Leo v. Nationstar Mortg. LLC*, 964 F.3d 213, 214 (3d Cir. 2020) (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)).

Because the Complaint alleges territorial—not federal—claims, the Court must apply Virgin Islands law to those claims, including the application of the filed-rate doctrine. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 992 (9th Cir. 2000) ("This case, however, involves only a *state* antitrust law being applied where an *agency of that state* has set a commodity price that, according to the complaint, was wrongfully depressed by manufacturers who collusively manipulated data submitted to and used by the agency. Whether damages can be awarded to the injured parties is a matter of state law. California has held, in contrast to federal law, that no filed rate doctrine exists as a bar."); *Leo v. Nationstar Mortg. LLC of Delaware*, Civ. No. 18-4099, 2019 WL 3822168, at *4 (D.N.J. Aug. 15, 2019) ("Because Plaintiffs allege both federal and state claims . . . , the Court must examine the filed-rate doctrine under both federal and state common law."), *aff'd* 964 F.3d 213 (3d Cir. 2020); *Zurich Am. Ins. Co. v. S. Connecticut Gas Co.*, 442 F. Supp. 3d 510, 515 (D. Conn. 2020) (determining whether Connecticut law recognizes the filed-rate doctrine where claims were governed by the substantive law of Connecticut).

Under Virgin Islands law, the Commissioner of Insurance has the power to review insurance rates, must be notified of any rate increases, and may disallow the rate increases. *See* 22 V.I.C. § 53a.[17] However, the Court has no information regarding what the rates in this insurance

---

[17] Specifically, the statute states:

(a) The Commissioner may review any health property or casualty insurance rate to determine if there is an actuarial basis for it and if it is supported by actual and credible loss and expense statistics or, if new coverage, by reasonable projections of losses and expenses. Pre-approval of rates is not required, but the Commissioner shall be notified 30 days in advance of the effective date of any rate increase.

(b) If the Commissioner determines that there is not sufficient evidence to justify a new rate, he may disallow the rate increase. The reason for the rejection must be in writing. An aggrieved carrier may demand a hearing pursuant to this chapter to reconsider the ruling and may appeal from the Commissioner's order refusing a

dispute were, or whether they were or were not submitted to the proper regulatory authority. *Cf. Leo*, 964 F.3d at 218 ("*Because Great American filed this force-placed hazard insurance rate with the appropriate state agencies*, the District Court properly dismissed claims alleging the rate was fraudulently inflated and seeking damages tied to the purported overcharge." (emphasis added)). Additionally, the Court has found no Virgin Islands cases applying the filed-rate doctrine, and the parties have cited none.

Given the lack of factual and legal clarity on the filed-rate doctrine, the Court declines—at this stage of the proceedings—to hold that Plaintiffs' claims based on damages related to alleged excessive insurance rates are barred by the filed-rate doctrine. *See Pa. State Univ. v. Keystone Alternatives LLC*, No. 19-cv-02039, 2020 U.S. Dist. LEXIS 38617, at *10 (M.D. Pa. Mar. 5, 2020) ("Where there exist 'disputed issues of fact' or 'undecided questions of law,' it is inappropriate to rule on the merits of the defense on a motion to dismiss." (quoting *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 363 (3d Cir. 1983))).

Defendant Siwell further argues that the Amended Complaint fails to plausibly plead a claim for unjust enrichment because the Amended Complaint does not include "any allegations to show, with supporting factual detail, how *Siwell* was enriched by the payment of premiums to *Great American*, how Siwell was supposed to know that the premiums were excessive, and why Siwell should reimburse Plaintiffs for premiums paid to another party." (Dkt. No. 35 at 15). The Court disagrees.

The Amended Complaint alleges that Plaintiffs paid premiums to Defendant Great

---

hearing or an order on hearing to the District Court. The appeal must be taken within 30 days.

22 V.I.C. § 53a.

American "through Siwell," and in turn Defendant Siwell would receive a "large commission" on the placement of insurance. (Dkt. No. 12-1 at ¶ 18). Thus, contrary to Defendant Siwell's assertion, the Amended Complaint includes factual allegations that Plaintiffs conferred a benefit on Defendant Siwell. The exact means by which insurance was provided and the payment therefor— however divided between Defendants—is a matter that can be determined through discovery.[18] Thus, the Court will deny Defendant Siwell's Motion to Dismiss Count VII.

### 8. Tortious Interference with a Business Relationship (Count VIII)

With regard to Count VIII, "Tortious Interference with a Business Relationship" (Dkt. No. 12-1 at 14-15), Defendant Siwell argues that the only allegations in the Amended Complaint are related to Defendant AFG's tortious interference with Plaintiffs' relationship with Defendant Great American, and thus the claim should be dismissed as to Defendant Siwell because there are "no allegations against Siwell and [the Amended Complaint] seeks no relief against it." (Dkt. 35 at 15). Plaintiffs do not argue that their tortious interference claim is directed toward Defendant Siwell or that they seek relief from Defendant Siwell for tortious interference. Indeed, in their Opposition to Defendant Great American's Motion to Dismiss, Plaintiffs state that their claim for Tortious Interference with a Business Relationship is directed only against Defendant AFG. (Dkt. No. 38 at 19). Given Plaintiffs' concession that Count VIII is not directed toward Defendant Siwell, the Court finds that Defendant Siwell's Motion to Dismiss is moot as to Count VIII.

### 9. Conversion (Count IX)

Count IX of the Amended Complaint asserts a claim for "Conversion of Chattels or

---

[18] Additionally, while Defendant Siwell argues that the Amended Complaint fails to allege "how Siwell was supposed to know that the premiums were excessive," this is not an element of the claim of unjust enrichment.

Personal Property." (Dkt. No. 12-1 at 15). Under Virgin Islands law, the tort of conversion is governed by the Restatement (Second) of Torts § 222A which defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Isaac v. Crichlow*, 63 V.I. 38, 59-60 (V.I. Super. Ct. 2015) (conducting *Banks* analysis and finding that this rule represents the soundest rule for the Virgin Islands); *Merchants Com. Bank*, 64 V.I. at 31-32 (adopting *Banks* analysis performed in *Isaac*); *XO Bistro, LLC v. Merrill*, No. ST-18-CV-780, 2021 WL 3214788, at *9 (V.I. Super. Ct. July 21, 2021); *see also Ross v. Hodge*, 58 V.I. 292, 308 (2013). "[T]he critical question is whether [the plaintiffs] had a right to control those proceeds at the time of the conversion." *Ross*, 58 V.I. at 308; *see also Finley v. Gov't of Virgin Islands*, No. SX-16-CV-456, 2019 WL 7987453, at *5 (V.I. Super. Ct. Nov. 12, 2019) ("[T]he proponent must still allege that he was entitled to immediate control at the time of conversion.").

"Conversion may be committed by intentionally engaging in several types of acts, one of which is obtaining possession of a chattel from another by fraud." *Ross*, 58 V.I. at 308 (citing Restatement (Second) of Torts §§ 221(b), 223). "Money is a chattel that may be the object of a conversion." *Addie v. Kjaer*, 51 V.I. 463, 474 (D.V.I. 2009) (citing *Chase Manhattan Bank, N.A. v. Power Prods.*, 27 V.I. 126, 129 (V.I. Terr. Ct. 1992)); *see also Isaac*, 63 V.I. at 61.

In support of their contention that the Amended Complaint states a claim for conversion of chattels against Defendant Siwell, Plaintiffs rely on the allegations in paragraphs 55 through 59 of the Amended Complaint. (Dkt. No. 48 at 16). However, the contents of those paragraphs contain only vague, conclusory allegations in which all Defendants are lumped together. (*See, e.g.*, Dkt. No. 12-1 at ¶ 55 ("The monies provided by the Plaintiffs to the Defendants were their personal

property, and it was entrusted to the Defendants."); *id.* at ¶ 56 ("Instead, the Defendants freely used the Plaintiffs' monies for their own purposes and financial gain, all to the detriment of the Plaintiffs. The Defendants used the Plaintiffs' monies in a way that is inconsistent with the rights of the Plaintiffs as the owners of such money and their properties, all for the Defendants' economic benefit and to the detriment and harm of the Plaintiffs."); *id.* at 57 ("Through their practice and pattern of misusing and misappropriating such monies, as well as wrongfully exercising unauthorized dominion, ownership and control over the monies, the Defendants have appropriated the money as their own, in denial of the Plaintiffs' rights to that property.")). For the purposes of a Rule 12(b)(6) Motion, such conclusory allegations are not entitled to the assumption of truth.

As noted above, the Amended Complaint does allege that Defendant Siwell received money from Plaintiffs, in that Defendant Great American allegedly would "take premiums to pay for it from the Plaintiffs through Siwell" and Defendant Siwell received a large commission as a part of the alleged scheme. (Dkt. No. 12-1 at ¶ 18). However, these facts do not suggest that Defendant Siwell exercised any dominion or control over Plaintiffs' funds when Plaintiffs were entitled to immediate control of those funds. *See Banco Popular De Puerto Rico v. Currence*, Civil No. 2017-39, 2018 WL 4473579, at *3 (D.V.I. Sept. 18, 2018) (dismissing counterclaim for conversion where "Currence does not state that he was entitled to immediate possession of the funds inside of the account" and "that Banco Popular acted unlawfully or without authorization"); *Olive v. deJongh*, No. ST-09-CV-426, 2012 WL 3313082, at *12 (V.I. Super. Ct. Aug. 3, 2012) ("Since Plaintiff has no right to control or possession of the public funds he alleges were misappropriated, the Complaint does not set forth a plausible claim for relief on the elements of conversion."); *Chase Manhattan Bank, N.A.*, 27 V.I. at 129 ("[T]he essence of conversion is not the acquisition of the property, rather it is the wrongful deprivation of that property."). Because

these scant facts do not plausibly state a claim for conversion against Defendant Siwell, the Court will grant Defendant Siwell's Motion to Dismiss Count IX.

### 10. Negligent or Intentional Infliction of Emotional Distress (Count X)

Finally, Count X of the Amended Complaint is titled "Intentional or Negligent Infliction of Emotional Distress." (Dkt. No. 12-1 at 16). Under Virgin Islands law, in order to state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that the defendant "(1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress." *Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 295 (V.I. Super. Ct. 2015) (citing Restatement (Second) of Torts § 46) (following *Banks* analysis performed in *Joseph v. Sugar Bay Club & Resort Corp.*, No. ST-2013-CV-491, 2014 WL 1133416 (V.I. Super. Ct. Mar. 17, 2014)); *see also Joseph*, 2014 WL 1133416, at *3 (finding that Restatement (Second) of Torts § 46 represents the soundest rule for the Virgin Islands), *rev'd in part on other grounds*, S. Ct. Civ. No. 2014-0048, 2015 WL 682117 (V.I. Feb. 17, 2015)); *Nelson v. Long Reef Condo. Homeowners Ass'n*, Civil Action No. 2011-0051, 2016 U.S. Dist. LEXIS 103022, at *73-74 (D.V.I. Aug. 5, 2016) (citing *Stevens v. Louise*, No. SX-14-CV-456, 2016 V.I. LEXIS 80 (V.I. Super. Ct. June 13, 2016)).

The Superior Court in *Donastorg v. Daily News Publ'g Co.* performed a *Banks* analysis and held that "to prevail on a claim of negligent infliction of emotional distress [("NIED")] under a theory that the plaintiff was the direct victim of a defendant's negligent conduct, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty of care to ensure the plaintiff does not suffer serious or severe emotional injury, which duty either arose by contract or was imposed as an independent legal obligation; (2) that the defendant breached its contractual or legal obligation,

i.e. its duty; and (3) that, as a direct and proximate result of defendant's breach, the plaintiff suffered a serious or severe emotional injury." 63 V.I. at 314[19]; *see also Diaz v. Ramsden*, 67 V.I. 81, 94 (V.I. Super. Ct. 2016) (conducting *Banks* analysis and determining test in *Donastorg* is the soundest rule for the Virgin Islands); *Aaron v. Virgin Islands Gov't Hosp. & Health Facilities Corp.*, 74 V.I. 222, 242 (V.I. Super. Ct. 2021) (following *Donastorg* and *Diaz*).[20]

Defendant Siwell argues that Plaintiffs have only made "formulaic recitations" and failed to show that they suffered "severe emotional distress." (Dkt. No. 35 at 18-19). Plaintiffs do not respond to Defendant Siwell's arguments regarding the IIED and NIED claims except to argue that Defendant Siwell failed to support its arguments adequately. (Dkt. No. 48 at 9 nn.23-24).

The Court agrees that the Amended Complaint fails to state a claim against Defendant

---

[19] The Superior Court in *Donstorg* also recognized a second test for when a plaintiff alleges a claim of negligent infliction of emotional distress under a theory that the plaintiff witnessed the defendant cause injury to a third party. 63 V.I. at 314-15. There are no allegations here that Plaintiffs witnessed any injury to a third party. This test is therefore inapplicable to the current matter.

[20] This Court has previously held that "the tort of negligent infliction of emotional distress requires that: (1) the plaintiff was in danger of his or her own safety; (2) the plaintiff suffered some physical harm; and (3) the physical harm was a result of the emotional distress." *Liburd v. Gov't of the Virgin Islands*, Civil Action No. 2011-020, 2013 U.S. Dist. LEXIS 34658, at *37 (D.V.I. Mar. 13, 2013); *see also Currence*, 2018 WL 4473579, at *3 (Gómez, J.). Defendant AFG argues that such a standard applies. (Dkt. No. 31 at 14 (citing *Int'l Islamic Cmty. of Masjid Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352, 370 (D.V.I. 1997), *aff'd* 176 F.3d 472 (3d Cir. 1999) and *Lempert v. Singer*, 766 F. Supp. 1356 (D.V.I. 1991)). However, the Superior Court in performing its *Banks* analyses has rejected those requirements. *See Diaz*, 67 V.I. at 94 ("This Court also agrees with the growing minority and the Virgin Islands Courts that have abandoned the physical injury and 'zone of danger' requirements. Physical injury and presence in the 'zone of danger' should not be required for recovery, but should be allowed as evidence that a plaintiff has suffered a severe or serious emotional injury."); *Donastorg*, 63 V.I. at 313 ("It should be noted that a plaintiff's presence in the zone of danger and the manifestation of physical symptoms may still constitute evidence that a plaintiff has suffered a severe or serious emotional injury. . . . However, neither fact is a prerequisite for recover[y] under a theory of negligent infliction of emotional distress in this jurisdiction.").

Siwell for either intentional or negligent infliction of emotional distress. First, regarding the element of emotional distress, the Amended Complaint alleges only conclusory allegations that Plaintiffs suffered "emotional distress" and "mental anguish" (Dkt. No. 12-1 at ¶ 61), which the Court need not consider. *See Liburd v. Gov't of the Virgin Islands*, Civil Action No. 2011-020, 2013 U.S. Dist. LEXIS 34658, at *38 (D.V.I. Mar. 13, 2013) (stating that "district courts may disregard such bare legal conclusions" such as "'Defendants[] negligently inflicted harm upon the Plaintiffs and that such actions have caused harm to Plaintiffs,' and 'Plaintiffs have suffered emotional distress and harm to their detriment which in turn has caused Plaintiffs economic loss and pecuniary injury.'"); *Hiss v. Com. Sec., LLC., Inc.*, No. SX-15-CV-104, 2016 WL 3092511, at *5 (V.I. Super. Ct. Apr. 8, 2016) ("Suffice it to say that the unenhanced conclusory factual assertions of emotional distress set forth in Plaintiff's Amended Complaint are not entitled to an assumption of truthfulness. As such, the allegations of the Amended Complaint are insufficient to permit a plausible inference of the existence of severe emotional distress required to sustain a claim for NIED.").

Second, the Amended Complaint fails to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," so as to state a claim for IIED. *Nelson*, 2016 U.S. Dist. LEXIS 103022, at *74 (quoting Restatement (Second) of Torts § 46 cmt. d)) (internal quotation marks omitted); *Donastorg*, 63 V.I. at 299 ("[I]ntentional infliction of emotional distress is meant to impose liability for only extreme and outrageous conduct."). As currently pleaded, Plaintiffs' allegations that their insurance was mishandled and perhaps that they were charged exorbitant insurance premiums does not meet the standard for outrageous conduct necessary to state a claim for IIED. *See FirstBank of Puerto Rico v. Prosser*, 69 V.I. 16, 19, 24-25

35

(V.I. Super. Ct. 2015) (dismissing counterclaim for intentional infliction of emotional distress where the allegation was that a bank "breached its contractual duty of confidentiality and good faith during bankruptcy proceedings and negotiations, specifically, concerning information regarding the [defendants'] mortgage account with FirstBank").

Third, with regard to a claim of negligent infliction of emotional distress, the Amended Complaint does not allege any facts regarding the relationship between Defendant Siwell and Plaintiffs beyond the simple provision of insurance coverage. Thus, the Court is unable to find that it plausibly alleges that Defendant Siwell owed Plaintiffs a duty of care to ensure that Plaintiffs did not suffer serious or severe emotional injury. *See Donastorg*, 63 V.I. at 314-15 (requiring as an element of NIED that the defendant owes the plaintiff a duty of care to ensure the plaintiff does not suffer serious or severe emotional injury).

In view of the foregoing, the Court will dismiss Count X against Defendant Siwell.

### C. Defendant Great American's Motion to Dismiss

#### 1. Breach of Contract (Count I)

Defendant Great American argues that Plaintiffs lack standing to bring a breach of contract claim because the insurance policy that they allege protected their properties, Master Policy Number 4091391, Certificate Number GRH0071429 ("Master Policy"), was a contract between Great American and Capital Mortgage (aka Defendant Siwell), not between Great American and Plaintiffs. (Dkt. No. 29 at 9-10). Additionally, Defendant Great American argues that the policy explicitly states that Plaintiffs do not have rights under the policy and therefore they do not have standing as third-party beneficiaries. *Id.* at 10. Plaintiffs argue that the Amended Complaint adequately pleads a claim for breach of contract. (Dkt. No. 38 at 9-16).

As noted above, the elements of a claim for breach of contract are "(1) an agreement; (2) a

duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip*, 66 V.I. at 621. Because the Court may not look at Defendant Great American's Exhibit 1 containing the insurance policy allegedly at issue, *see* section III.A., it will rely on only the allegations in the Amended Complaint.

The Court finds that the Amended Complaint alleges all four elements of a breach of contract claim. The Amended Complaint asserts that Plaintiffs received insurance coverage from Defendant Great American and that their "properties were insured accordingly, covering the risks of windstorms and hurricanes." (Dkt. No. 12-1 at ¶¶ 6-7). Plaintiffs further allege that their properties were damaged by Hurricane Maria which were "covered losses under the aforementioned insurance." *Id.* at ¶ 7. The Amended Complaint also alleges that Defendant Great American failed to timely inspect and assess the damage caused to Plaintiffs' insured properties and failed to pay Plaintiffs "the full payment of insurance proceeds . . . relating to their losses." *Id.* at ¶¶ 8, 10, 13, 16. Plaintiffs assert that they have been damaged because they have not received the full payment of the insurance proceeds to repair their property, and they have been unable to generate income from the property without the repairs. *Id.* at ¶ 11, 16.

These allegations plausibly state a claim for breach of contract against Defendant Great American. The Court will therefore deny Defendant Great American's Motion to Dismiss Count I.

### 2. Counts II, III, IV, V, VI, VII, IX and X

Defendant Great American also argues that because there is no contract between Great American and Plaintiffs and because Plaintiffs are not intended third-party beneficiaries of the contract as a matter of law, all the other claims must be dismissed:

> Plaintiffs cannot prove that Great American owed them a contractual duty, they cannot prove bad faith or breach of good faith and fair dealing, Counts I, II, III, IV,

> V, and VI must be dismissed . . . . Nor can Plaintiffs claim that Great American was
> unjustly enriched, or engaged in conversion or breach of fiduciary duty[,] requiring
> dismissal of Counts IX and X. Simply put, Plaintiffs did not make payments to
> Great American, did not engage in any transactions with Great American, and Great
> American made no representation to Plaintiffs. Therefore Great American could
> not have converted Plaintiffs' funds or been unjustly enriched.

(Dkt. No. 29 at 17).

The Court finds that simply looking at the Amended Complaint, there are sufficient factual allegations in the Amended Complaint to plead the existence of a contract between Plaintiffs and Defendant Great American. Thus, to the extent that Great American simply relies on the alleged insufficiency of the contract claim as the basis for the dismissal of the other claims, this argument lacks merit. Moreover, the Court disagrees with Defendant Great American that Counts II, III, IV, V, VI, VII, IX and X in the Amended Complaint are subject to dismissal based on the argument that there is no contractual duty between Plaintiffs and Defendant Great American. In addition to the sufficiency of the contract allegations, it is axiomatic that legal duties and torts are not necessarily contingent on the existence of a contract. The other claims—with the exception of the claim for breach of the implied covenant of good faith and fair dealing—do not hinge on the existence of a contract. *See* section III.B. (stating the elements of the various claims under Virgin Islands law).

With regard to Counts II, III, IV, V, VI, VII, IX and X, Defendant states: "Simply put, Plaintiffs did not make payments to Great American, did not engage in any transactions with Great American, and Great American made no representation to Plaintiffs." (Dkt. No. 29 at 17). In other words, Defendant Great American asserts that Plaintiff cannot make these claims because Defendant Great American did not engage in certain conduct. However, the Court cannot determine the ultimate facts regarding Defendant Great American's conduct on the record that

exists at this stage of the litigation. Thus, the Court cannot dismiss Plaintiffs' claims based on such an argument.

Defendant Great American provides no other arguments as to why the Amended Complaint fails to state a claim against it for Counts II, III, IV, V, VI, VII, IX and X. Therefore, the Court will deny Defendant Great American's Motion to Dismiss as to those counts.

### 3. Title 22 of the Virgin Islands Code

Defendant Great American next argues that Plaintiffs cannot bring a private claim against Defendant Great American for violating Title 22 of the Virgin Islands Code that governs the conduct of insurers in the Territory as it did not sell an insurance policy to Plaintiffs:

> Great American, an Ohio company, sold an insurance policy to Capital Mortgage, a Texas company. Great American is not engaged in the insurance business in the Virgin Islands, does not sell policies to customers in the Virgin Islands, does not advertise in the Virgin Islands and did not transact any insurance business in the Virgin Islands.

(Dkt. No. 29 at 17). Additionally, Defendant Great American argues that there is no private right of action to enforce Title 22. *Id.* at 18. Plaintiffs argue to the contrary. (Dkt. No. 38 at 17-19).

While one paragraph of the Amended Complaint refers to various sections of Title 22 of the Virgin Islands Code (Dkt. No. 12-1 at ¶ 9), the Court notes that none of the numerous causes of action in the Amended Complaint is based on Title 22. Therefore, from the face of the Amended Complaint, it appears that Plaintiffs are not in fact bringing a private cause of action under Title 22.

However, in response to Defendant Great American's Motion to Dismiss, Plaintiffs argue that "the V.I. Insurance Code permits an insured to bring a private right of action against insurers or brokers" and "[P]laintiffs pled how [Defendant Great American] violated provisions of the V.I. Insurance Code." (Dkt. No. 38 at 17-18). Specifically, Plaintiffs argue that:

> [Defendant Great American] violated various provisions of the V.I. Insurance Code including breaches of its duty: to act in good faith, to abstain from deception and practice honesty and equity in all insurance matters (*see, e.g.*, 22 V.I.C. § 2); to avoid misrepresenting the nature and extent of the policy and coverage provided (*see, e.g.*, 22 V.I.C. § 1209); to refrain from false representations and unfair practices (*see, e.g.*, 22 V.I.C. §§ 1201, 1204); and an affirmative duty to adequately, properly and timely adjust the relevant damage and losses.

*Id.* at 17.

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Plaintiffs have listed their numerous causes of action in their Amended Complaint, none of which are for a private right of action under Title 22. The Court will not permit Plaintiffs to amend their Complaint to add a cause of action in response to Defendant Great American's Motion to Dismiss. *See Doe v. Casino*, 381 F. Supp. 3d 425, 437 (E.D. Pa. 2019) ("[Plaintiff] contends in a footnote that Count I could be relabeled 'Sex Discrimination' and supported by the same facts. . . . But it is well settled that a plaintiff may not amend a complaint through a response to a motion to dismiss."); *Morel v. Goya Foods, Inc.*, Civil Action No. 20-5551, 2022 U.S. Dist. LEXIS 15780, at *11 (D.N.J. Jan. 28, 2022) ("Plaintiffs have not brought a claim under § 191(1)(c), and they may not amend their complaint in opposition to a motion to dismiss."); *Sweet v. Cnty. of Gloucester*, Civil No. 15-282, 2016 U.S. Dist. LEXIS 77649, at *14 (D.N.J. June 15, 2016) ("Plaintiff's attempt to recast his FMLA interference claim as an FMLA retaliation claim through argument in his opposition brief is improper and insufficient. Plaintiff's Amended Complaint fails to plead an FMLA retaliation claim. This Court will not permit Plaintiff to add or substitute causes of action through legal argument in his opposition brief."). Because Plaintiff has not brought a claim for

breach of Title 22, the Court will deny as moot Defendant Great American's Motion to Dismiss on the issue of a private cause of action under Title 22.[21]

### 4. Tortious Interference with a Business Relationship (Count VIII)

Next, Defendant Great American seeks to dismiss Plaintiffs' claim for Tortious Interference with a Business Relationship. (Dkt. No. 29 at 18-20). However, Plaintiffs state that they are not asserting this claim against Defendant Great American:

> Plaintiffs have asserted a claim against [Defendant AFG] for AFG's tortious interference with [P]laintiffs' business relationship with [Defendant Great American]. The FAC does not assert a claim for tortious interference with a business relationship against [Defendant Great American] so there is no such claim for [Defendant Great American] to move to dismiss.

(Dkt. No. 38 at 19). Given Plaintiffs' concession that Count VIII is not directed toward Defendant Great American, the Court finds that Defendant Great American's Motion to Dismiss is moot as to Count VIII.

### D. Defendant AFG's Motion to Dismiss

With regard to Defendant AFG's Motion to Dismiss, Plaintiffs argue that Defendant AFG has waived many of its arguments regarding the various causes of action because it failed to perform adequate *Banks* analyses. (Dkt. No. 40 at 8-9). The Court finds—for the same reasons discussed in the context of Defendant Siwell's Motion to Dismiss—that the arguments asserted by Defendant AFG here are supported by sufficient legal precedent to preserve their arguments before this Court. *See Libien*, 2016 WL 7017642, at *2 & n.11.

---

[21] The Court notes that its finding in this regard does not mean that Title 22 and the duties imposed thereunder are *irrelevant* to Plaintiffs' claims. Title 22 may speak to the applicable legal duties and standards of care at issue in Plaintiff's common law causes of action. *See, e.g.*, *Charleswell*, 308 F. Supp. 2d at 564-65; *FirstBank P.R. v. Ainger*, 74 V.I. 350, 359-60 (V.I. Super. Ct. 2021) (finding bank breached a duty of care under 22 V.I.C. § 1201(a)).

### 1.   Tortious Interference with a Business Relationship (Count VIII)

Count VIII of the Amended Complaint alleges a claim for "Tortious Interference with a Business Relationship" (Dkt. No. 12-1 at 14). In this regard, Plaintiffs refer to a claim of "tortious interference with existing contractual relations." (Dkt. No. 40 at 10).

Under Virgin Islands law, to state a claim for tortious interference with existing contractual relations, a plaintiff must establish: "(1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract; (3) that the defendant interfered with the contract using improper means or with an improper motive; and (4) that the plaintiff was damaged as a result." *Jahleejah Love Peace*, 75 V.I. at 295 (referring to the tort of intentional interference with existing contracts).

Defendant AFG argues that the Amended Complaint does not state a claim for tortious interference because at a minimum, the plaintiff must plead the existence of a contract between itself and a third party and Plaintiffs were not a party to any contract. (Dkt. No. 31 at 8). Defendant AFG argues—based on the Master Policy submitted by Defendant Great American—that Plaintiffs are not a party nor a third-party beneficiary of the Master Policy. *Id.* Further, Defendant AFG argues that the Amended Complaint fails to plead sufficient factual matter under *Twombly* and *Iqbal* to state a claim for tortious interference. (Dkt. No. 52 at 2-5). Plaintiffs argue, on the other hand, that the Court may not look at the Master Policy, and the allegations of the Amended Complaint allege the existence of a contract between Plaintiffs and Defendant Great American. (Dkt. No. 40 at 9-10).

As noted above, the Court declines to consider Exhibit 1 containing the alleged insurance policy at issue. The Amended Complaint alleges a contractual relationship between Defendant Great American and Plaintiffs because it alleges that Plaintiffs paid for and received insurance

coverage with Defendant Great American. (Dkt. No. 12-1 at ¶ 6). However, the Amended Complaint references Defendant AFG only a few times. Indeed, Count VIII of the Amended Complaint is the only Count where Defendant AFG is specifically mentioned. The only allegations throughout the Amended Complaint referring to Defendant AFG by name are:

1. "On information and belief, Defendant Great American is wholly owned by Defendant American Financial Group, Inc. ("AFG"), a diversified financial service holding company based at the Great American Tower in Cincinnati, Ohio; and AFG's major insurance division operates as the Defendant Great American, which is ostensibly located at 1100 E. Washington Street, Suite 200, Grayslake, IL 60030." (Dkt. No. 12-1 at ¶ 5);

2. "On information and belief, employees, officers and directors of AFG had reason to know that the Defendant Great American's insured—including but not limited to the Plaintiffs—were being damaged by the misconduct described herein." *Id.* at ¶ 20;

3. "AFG's employees, officers and directors have knowledge of the Plaintiffs' business relationship with the Defendant Great American pursuant to said insurance. On information and belief, AFG's employees, officers and directors intentionally and unjustifiably interfered with the Plaintiffs' rights and reasonable expectations under that insurance, as described above." *Id.* at ¶ 51.

4. "The Plaintiffs have been damaged as a result of the interference by AFG's employees, officers and directors with the insurance, *inter alia*, by obtaining bad faith and exorbitant charges for such insurance in contravention of the Plaintiffs' rights under such insurance, and by failing to provide funds to repair the Plaintiffs' properties after they were damaged in the hurricanes." *Id.* at ¶ 52.

5. "The Plaintiffs seek a judgment in their favor against AFG, its employees, officers and directors for the actual damages suffered by them as a result of such tortious interference, and for punitive and exemplary damages in an amount as is sufficient to punish AFG, its employees, officers and directors and deter them and others from engaging in similar misconduct." *Id.* at ¶ 53.

Other allegations in the Amended Complaint simply refer to Defendants collectively. (*See id.* at ¶¶ 20-48, 54-62).

The Amended Complaint is utterly bereft of any factual allegations as to what action(s) Defendant AFG allegedly took to interfere with the alleged insurance contract between Defendant

Great American, Defendant Siwell, and Plaintiffs. Simply stating that Defendant AFG's "employees, officers and directors intentionally and unjustifiably interfered with the Plaintiffs' rights and reasonable expectations under that insurance" (Dkt. No. 12-1 at ¶ 51), is a legal conclusion not afforded the presumption of truth on a Rule 12(b)(6) motion. Nor is a claim stated by Plaintiffs' allegation and argument that Defendant AFG interfered "by obtaining bad faith and exorbitant charges for such insurance in contravention of [P]lainitffs' rights under such insurance, and by failing to provide funds to repair [P]laintiffs' properties after they were damaged." (Dkt. Nos. 12-1 at ¶ 52; 40 at 11 n. 20). Instead, such an allegation—which seemingly asserts that the alleged "exorbitant" charges were in place pursuant to the insurance contract at issue—fails to plausibly state a claim that Defendant AFG tortiously interfered with an existing contractual relationship by imposing exorbitant charges after the existing contract was in place. And, assuming that there was some change in the insurance charged after the insurance policy was in place, there are no factual allegations that so assert. Nor does the Amended Complaint provide any factual basis for the alleged "exorbitant charges." Moreover, as noted, the Amended Complaint fails to allege any facts as to what action Defendant AFG took to cause Defendant Great American to allegedly fail to pay out the proceeds in accordance with Plaintiffs' rights under the insurance policy.

In view of the foregoing, the Court will dismiss Plaintiffs' claim of Tortious Interference with a Business Relationship as to Defendant AFG. *See Kiwi Constr., LLC v. Pono*, No. ST-2013-CV-011, 2016 WL 213037, at *5 (V.I. Super. Ct. Jan. 15, 2016) (dismissing a claim for interference with existing contractual relations for failure to state a claim because the defendants were "left to speculate as to the behavior they must defend"); *Rondon*, 274 V.I. at 419 (under a notice pleading standard, dismissing a claim for interference with existing contractual relations

where the plaintiff failed to "offer any facts that Defendants improperly interfered with any contracts or business relationships").

### 2.  Piercing the Corporate Veil and Other Claims

Defendant AFG argues that the Amended Complaint should be dismissed for failure to state a claim because "Plaintiffs' claims against AFG appear to rest on a veil piercing theory" and Plaintiffs have not pleaded facts that AFG and Defendant Great American are alter egos. (Dkt. No. 31 at 5). Thus, Defendant AFG argues that the claims, with the exception of tortious interference with a business relationship, must fail. *Id.* at 10-15.

Generally, shareholders of a corporation are not liable for the acts of the corporation itself. *Cesar Castillo, Inc. v. Healthcare Enterprises, L.L.C.*, Civil Action No. 2012-108, 2016 WL 5660437, at *3 (D.V.I. Sept. 27, 2016). Thus, a parent corporation is not generally liable for the acts of its subsidiary. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) ("[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent."). However, piercing the corporate veil is "an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *Cesar Castillo, Inc.*, 2016 WL 5660437, at *3 (quoting *Matheson v. Virgin Islands Cmty. Bank, Corp.*, 297 F. Supp. 2d 819, 833 (D.V.I. 2003)) (internal quotation marks omitted). "In the Virgin Islands, piercing the corporate veil is appropriate only 'where the shareholder has exercised such domination and control over the corporation that the corporation has become an alter ego of the shareholder, and where the shareholder has utilized the corporate form to perpetuate the fraud or injustice at issue in the litigation.'" *Id.* (quoting *Donastorg v. Daily News Publ'g Co., Inc.*, 63 V.I. 196, 333 (V.I. Super. Ct. 2015)).

Plaintiffs argue that "[u]nder the theory of direct liability, [they] have pled sufficient

45

allegations to support a theory of recovery against AFG" and in any event "the proper procedure would be for [Defendant AFG] to file a summary judgment motion after [P]laintiffs have been given sufficient time to conduct discovery on the extent of control exerted." (Dkt. No. 40 at 20). Plaintiffs cite the Third Circuit case *Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001), describing the theory of "direct liability." (Dkt. No. 40 at 19-21). As described in *Pearson*:

> [I]t has long been acknowledged that parents may be "directly" liable for their subsidiaries' actions when the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management," and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership. In such situations, the parent has not acted on its own (in which case there would be no need even to consider the subsidiary's actions), nor has it acted in its capacity as owner of the subsidiary; rather, it has forced the subsidiary to take the complained-of action, in disregard of the subsidiary's distinct legal personality. Thus, in the labor context, "direct" liability may attach if the parent has overridden the subsidiary's ordinary decision-making process and ordered it to institute an unfair labor practice, or to create discriminatory hiring policies. In this way, direct liability functions essentially as a kind of "transaction-specific" alter ego theory.

247 F.3d at 487 (quoting *United States v. Bestfoods*, 524 U.S. 51, 64 (1998) and citing *Esmark, Inc. v. NLRB*, 887 F.2d 739, 756-57 (7th Cir. 1989)) (internal citations omitted);[22] *see also Esmark, Inc.*, 887 F.2d at 757 ("It is solely where a parent disregards the separate legal personality of its subsidiary (and the subsidiary's own decision[-]making 'paraphernalia'), and exercises direct control over a specific transaction, that derivative liability for the subsidiary's [actions] will be imposed . . . . ").

---

[22] While the Third Circuit discussed this theory of liability in the context of a labor dispute, the principle has been applied in other contexts. *See Esmark, Inc.*, 887 F.2d at 756 ("[A] parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions. Under this 'transaction-specific' theory of direct participation, parent companies have been held liable for a wide variety of misconduct by subsidiaries: patent or copyright infringement, false advertising, fraud, conversion, and the creation of a nuisance.").

While the ultimate resolution of whether the Court should pierce the corporate veil is proper to resolve later in the proceedings, at this stage, Plaintiffs must still plausibly allege a corporate veil-piercing theory. For example, in *Chitolie v. Bank of Nova Scotia*, 62 V.I. 85 (V.I. Super. Ct. 2014)—a case cited by Plaintiffs (Dkt. No. 40 at 20)—the Superior Court declined to certify a question to the Virgin Islands Supreme Court on the issue of veil piercing prior to discovery because the issues "while potentially controlling in the context of a post-discovery motion for summary judgment, are not determinative of the issue of the plausibility of Plaintiffs' claims set out in their initial pleading." *Chitolie*, 62 V.I. at 88-89. However, the Superior Court found that the plaintiffs had included "sufficient factual allegations in their Amended Complaint to meet the plausibility standard (regarding Plaintiffs' LLC veil-piercing theory)." *Id.* at 88; *see also Cesar Castillo, Inc.*, 2016 WL 5660437, at *3 ("To state a claim for relief that Defendant Christian is personally liable for the acts of Corporate Defendants, the Amended Complaint must contain well-pleaded factual allegations that Defendant Christian dominated and controlled Corporate Defendants to such an extent that they became his alter egos, and that Defendant Christian 'utilized the corporate form to perpetuate the fraud or injustice at issue in the litigation.'" (quoting *Donastorg*, 63 V.I. at 333)); *Price v. Foremost Indus.*, Civil Action No. 17-00145, 2017 U.S. Dist. LEXIS 211555, at *19 (E.D. Pa. Dec. 22, 2017) (granting a motion to dismiss for failure to state a claim where "Plaintiffs fail[ed] to allege any facts justifying veil-piercing").

For their corporate veil-piercing allegations, Plaintiffs rely on the allegations in paragraphs 5, 20, 51, and 52 of the Amended Complaint. (Dkt. No. 40 at 20). These paragraphs consist of allegations that: Defendant Great American is the wholly owned subsidiary of Defendant AFG (Dkt. No. 12-1 at ¶ 5); the "employees, officers and directors of AFG had reason to know that Defendant Great American's insured . . . were being damaged by the misconduct described herein,"

*id.* at ¶ 20; Defendant AFG's employees, officers and directors knew about Plaintiffs' business relationship with Defendant Great American and "unjustifiably interfered" with Plaintiffs' rights and reasonable expectations under the insurance, *id.* at ¶ 51; and, Plaintiffs were damaged by said actions, *id.* at ¶ 52. However, piercing the corporate veil requires more than a mere allegation that Defendant Great American is a wholly owned subsidiary of Defendant AFG. *Hyjurick v. Commonwealth Land Title Ins. Co.*, No. 11cv1282, 2012 U.S. Dist. LEXIS 59087, at *13 (M.D. Pa. April 27, 2012) ("District courts sitting in the Third Circuit have held that a plaintiff who seeks to pierce the corporate veil of a wholly owned subsidiary corporation must allege some facts beyond mere evidence of ownership to support such an action against the parent company.") (collecting cases). Moreover, assertions such as that Defendant AFG knew of "misconduct" and that it "intentionally and unjustifiably interfered," are mere conclusory allegations that are not afforded the presumption of truth on a Rule 12(b)(6) motion. Given no other facts, the Court finds that Plaintiffs have not plausibly alleged that Defendant AFG is liable for the actions of Defendant Great American under a theory of piercing the corporate veil.

Plaintiffs further argue that "the FAC adequately states claims against AFG in its own capacity without any need to pierce the corporate veil to find it directly liable in its own right." (Dkt. No. 40 at 19). Even assuming that "direct liability" as described in *Pearson* would be applicable under Virgin Islands law,[23] Plaintiffs have failed to allege sufficient facts regarding the alleged control over Defendant Great American exercised by Defendant AFG in regard to this specific transaction to plausibly allege that Defendant AFG is liable under such a theory.

---

[23] The Court notes that while Plaintiffs have cited Virgin Islands cases discussing corporate veil-piercing as a form of liability, Plaintiffs have not cited any Virgin Islands cases discussing their theory of direct liability.

Plaintiffs argue that the Amended Complaint states a claim for breach of contract against Defendant AFG because "the FAC adequately pleads all elements needed to establish the existence of a contract between Plaintiffs and [Defendant Great American]." (Dkt. No. 40 at 10). However, there is no allegation of a contract between Defendant AFG and Plaintiffs upon which a breach of contract claim could be based. Nor are there factual allegations of interference by Defendant AFG in Defendant Great American's operations that would support the "'transaction-specific' alter ego theory" of direct liability for breach of contract. *Pearson*, 247 F.3d at 487. Further, Plaintiffs rely on only vague and conclusory allegations that refer to "Defendants" collectively without specifying what each particular Defendant is alleged to have done. (*See, e.g.*, Dkt. No. 12-1 at ¶ 22 ("The Plaintiffs detrimentally relied on the promises, representations, omission of material facts, and expertise of the Defendants in making the decisions to insure their properties . . . and the Defendants accepted monies from the Plaintiffs on that basis.")). The Complaint thus fails to allege the existence of an agreement between Defendant AFG and Plaintiffs, much less facts that show a duty created by an agreement or a breach of such duty. *See Phillip*, 66 V.I. at 621. The Court will therefore dismiss Plaintiffs' claims for breach of contract as to Defendant AFG—under the theory of "direct liability," traditional corporate veil-piercing, or otherwise.[24] Because the Court has found

---

[24] Defendant AFG also argues that "all of Plaintiffs' tort claims fail as a matter of law because they are not independent from Plaintiffs' breach of contract claims" under the gist of the action doctrine. (Dkt. No. 31 at 12). "[T]he gist of the action doctrine precludes tort suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort." *Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013). While the Supreme Court of the Virgin Islands has not spoken to the application of the doctrine, other courts have held that the gist of the action doctrine is the law in the Virgin Islands. *See Addie*, 737 F.3d at 866 (holding that the gist of the action doctrine is applicable in the Virgin Islands); *Pollara v. Chateau St. Croix, LLC*, No. SX-06-CV-423, 2016 WL 2865874, at *6 (V.I. Super. Ct. May 3, 2016) (conducting *Banks* analysis and holding that the gist of the action doctrine was the soundest rule for the Virgin Islands); *Franken v. Bradley Sisneros & Conundrum Mktg., LLC*, No. ST-15-CV-88, 2016 WL 11723593, at *5 (V.I. Super. Ct. Apr. 18, 2016) (conducting *Banks* analysis and "find[ing] no reason to upset . . . application [of the gist of the action doctrine] as the doctrine serves to promote

that the Amended Complaint has failed to plausibly plead that Defendant AFG and Plaintiffs were in a contractual relationship—or that corporate veil-piercing or direct liability theories apply to the contractual relationship with Defendant Great American—Plaintiffs' claim for breach of implied covenant of good faith and fair dealing also must be dismissed for failure to state a claim. *See Gardiner*, 859 F. Supp. 2d at 736.

The Court will also dismiss the claims of estoppel, negligence,[25] and fraud against Defendant AFG because—as with Defendant Siwell—the Complaint is bereft of factual allegations that Defendant AFG made any representations or promises that are necessary for such

---

judicial efficiency"); *XO Bistro, LLC,* 2021 WL 3214788, at *8 (following *Banks* analysis performed in *Franken*).

"Generally, courts apply the gist of the action doctrine when the claims are (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract." *Addie*, 737 F.3d at 866. However, courts have noted that whether to apply the gist of the action doctrine to bar claims requires examination of the facts. *Addie*, 737 F.3d at 868 ("Application of this doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims."); *Franken*, 2016 WL 11723593, at *5 ("As Virgin Islands courts have identified, whether an asserted duty arises out of a contractual relationship or out of a duty generally imposed by society often remains a fact-intensive inquiry"). Given the lack of any factual development at this stage in the case, the Court is not prepared to hold—as suggested by Defendant AFG (Dkt. No. 31 at 12)—that Plaintiffs' tort theories are precluded as a matter of law under the gist of the action doctrine. *See Jefferson v. Bay Isles Assocs., L.L.L.P.*, 59 V.I. 31, 52 (V.I. Super. Ct. 2011) (holding it would be "premature" to dismiss counts based on the gist of the action doctrine at the motion to dismiss stage without the aid of discovery); *Joseph v. Divine Funeral Services, LLC*, 71 V.I. 121, 130 (V.I. Super. Ct. 2019) ("Without evidence as to whether the contract of the parties included terms relating to the place and manner of burial, the tort claim cannot be deemed duplicative of a claim of contract breach or dependent upon contract terms that remain undefined."); *Doherty v. Hertz Corp.*, Civil Action No. 10-cv-00359, 2010 U.S. Dist. LEXIS 124714, at *17-18 (D.N.J. Nov. 24, 2010) ("At this stage, Doherty may plead alternative legal theories. If the rental agreement is later found void for lack of mutual assent or unconscionability, then Doherty may proceed with her unjust enrichment claim.").

[25]In view of Plaintiffs' response to Defendant Siwell, the Court construes Plaintiffs' negligence claim as a claim for negligent misrepresentation. *See* section III.B.3.

claims. *See* sections III.B.2-4.

Further, the Court will dismiss Plaintiffs' claim for conversion as to Defendant AFG because there are no facts which suggest that Defendant AFG exercised any dominion or control over Plaintiff's chattel. *See Isaac*, 63 V.I. at 59-60. Similarly, the sparse allegations against Defendant AFG do not plausibly suggest that Defendant AFG received anything of value or was enriched in any way. Thus, the Court will dismiss Plaintiffs' unjust enrichment claim as to Defendant AFG. *See Walters*, 60 V.I. at 779-80.

The Court will also grant Defendant AFG's Motion to Dismiss as to Count V because there are no facts alleging that Defendant AFG and Plaintiffs had any relationship at all—other than the fact that Defendant Great American is wholly owned by Defendant AFG—let alone that they had any relationship that would give rise to the heightened duties necessary to state a claim for a breach of fiduciary duty. *See Ebner*, 2018 WL 3996888, at *7. Finally, the Court will dismiss Count X as to Defendant AFG because the Amended Complaint does not allege any facts that Defendant AFG took any action that would cause emotional distress to Plaintiffs either intentionally or negligently. Moreover, as noted above, the Amended Complaint has not alleged that Plaintiffs suffered any emotional distress beyond conclusory and vague allegations which are insufficient to state a claim. *See* section III.B.10.

In view of the foregoing, the Court will dismiss all claims against Defendant AFG.

## IV.     LEAVE TO AMEND

Plaintiffs have requested the opportunity to amend their Amended Complaint if the Court finds the allegations in the Amended Complaint are insufficient. (Dkt. Nos. 38 at 7 n.9; 40 at 7 n.11).[26]

---

[26] Although Plaintiffs have not filed a motion to amend, the Court will construe the request in their

Pursuant to Fed. R. Civ. P. 15(a), courts should "freely" give leave to amend complaints when justice requires. *In re Burlington Coat Factory*, 114 F.3d at 1434. Leave to amend should be "freely given," because "[a]llowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits." *Ali v. Intertek Testing Servs. Caleb Brett*, 332 F. Supp. 2d 827, 829 (D.V.I. 2004) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1474 (1990)). Indeed, leave to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent a justifying reason, it is an abuse of discretion to deny leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court is unaware of any basis for concluding that amendment would be futile, or otherwise inequitable. Although Defendants request that the Amended Complaint be dismissed with prejudice, they have not presented any arguments that would justify the denial of leave to amend. Thus, the Court will dismiss without prejudice the Amended Complaint against Defendant AFG in its entirety, and Counts II, III, IV, V, VI, IX, and X of the Amended Complaint against Defendant Siwell. The Court will grant Plaintiffs leave to amend the Amended Complaint solely to address the deficiencies identified in this Memorandum Opinion.

---

Oppositions to the instant Motions to Dismiss as such a motion. *See Coastal Air Transport, Inc. v. Pickering*, Civil No. 2013-0089, 2016 U.S. Dist. LEXIS 159929, at *10 (D.V.I. Nov. 18, 2016) (construing a request to amend made in a response to a motion to dismiss as a motion for leave to amend).

## V.     CONCLUSION

For the reasons stated above, the Court will deny Defendant Great American's Motion to Dismiss as to Counts I, II, III, IV, V, VI, VII, IX, and X. The Court will also grant Defendant Siwell's Motion to Dismiss as to Counts II, III, IV, V, VI, IX, and X with leave to amend, but deny the Motion to Dismiss as to Counts I and VII. Further, the Court will grant Defendant AFG's Motion to Dismiss, except to the extent that it seeks dismissal of Plaintiffs' claims with prejudice. Instead, the Court will grant Plaintiffs leave to amend their Amended Complaint. Finally, the Court will deny as moot Defendant Siwell's and Defendant Great American's Motions to Dismiss Count VIII, and Defendant Great American's Motion to Dismiss on the issue of a private cause of action under Title 22.

An appropriate Order accompanies this Memorandum Opinion.

Date: September 22, 2022                         _____/s/_____
                                                WILMA A. LEWIS
                                                District Judge